SALVATORE IUDICA *vs.* LAURA DeNEZZO ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 12th—decided June 21st, 1932.

*Aaron Nassau,* with whom was *A. J. Rich,* and, on the brief, *Francis P. Rohrmayer,* for the appellant (plaintiff).

*DeLancey S. Pelgrift,* with whom was *Victor De-Nezzo,* for the appellees (defendants).

Avery, J.   January 7th, 1931, the plaintiff fell down a flight of stairs in a tenement house owned by the defendant. This building contained three apartments, each rented to a separate family, with a common hallway on each flight and stairways to the second and third floors providing the only means of entering and leaving the building from the apartments on the second and third stories. The stairway from the third floor to the second floor has a turn in it; the one from the second to the first floor is straight. On the second floor, on the left-hand side as one descends, is a ledge or platform about eight inches wide. It begins beneath the lower edge of the first tread and extends along the left-hand side of the stairs horizontally to a point over the tenth stair from the top. Light fixtures were placed at the head of the flights of stairs on the second and third floors, and the lights were connected with a separate meter in the basement, at the expense of the defendant. These facts were not controverted at the trial. In addition, the plaintiff claimed to have proved the following: About eight o'clock in the evening of January 7th, 1931, the plaintiff, a man fifty-seven years of age, who was then living with his daughter in a tenement on the third floor, left her apartment to leave

the building. At that time, all the hallways were dark, and the plaintiff started to descend the stairway with the aid of such light as came through the doorway in his daughter's kitchen, the door of which had been left open. He proceeded to descend the flight of stairs from the third to the second floor by the aid of the light coming from his daughter's kitchen, and, when this became insufficient, he started to grope along the hallway on the second floor to the landing of the stairs leading to the ground floor with his hand upon the wall upon his left. When he had reached the landing at the top of the stairs leading to the ground floor, as he put his foot on the first step he fell and was precipitated to the bottom of the flight of stairs, and injured. There was no handrail on the left of the stairway, going down, but there was a railing on the right-hand side in some places. The treads on the stairway from the first to the second floor were worn, varying from one quarter to one half an inch, measuring from the bottom of a straight edge placed along the upper edge of each tread to the surface of the tread.

The plaintiff charged the defendant with negligence: (1) In failing to keep the stairway lighted; (2) in failing to keep it free from defects caused by wear; and (3) in not providing a proper handrail thereon. The plaintiff filed no requests to charge at the trial.

Upon this appeal, the plaintiff assigns error in the charge of the court, and also asks certain corrections in the statement of the finding as to the evidence and claims of the plaintiff in order to test the adequacy of the charge. The court instructed the jury that it was the duty of the defendant to use reasonable care to keep the stairway reasonably free from defects, and reasonably safe for use. In the course of the charge upon this subject, the court stated: "It would be immaterial how much the other steps were worn if the

first step was not worn.   In addition to proving that
the step from which the plaintiff fell was worn to such
extent as to render it not reasonably safe for use, he
must also prove that its worn or defective condition
was the cause of his falling. . . . Now, in this connec-
tion, I will refer to the so-called platform.   There is
nothing in the case, gentlemen of the jury, which
would justify you in finding that was the proximate
cause of this plaintiff's fall."   The plaintiff asks several
additions to the finding as to facts claimed by him.
The purport of his additions is to show that the plain-
tiff was caused to fall by stepping upon the platform,
and the plaintiff claims that the court, by removing the
platform as the cause of the accident from the con-
sideration of the jury, erred in this part of its charge.
An examination of the evidence certified in the motion
to correct shows that the only testimony as to the
manner in which the plaintiff fell was that of the plain-
tiff himself.   He stated that, when he reached the
landing at the top of the stairs leading to the ground
floor, "he put his foot on the first step, and fell."   He
nowhere states in his testimony that he at any time had
stepped upon the platform, and the trial court very
properly removed this from the consideration of the
jury.   The court could not permit the jury to specu-
late as to the cause of the plaintiff's fall.   It was the
duty of the plaintiff to establish the cause of his in-
juries by evidence, and there having been no evidence
that the plaintiff had stepped upon the platform, the
jury could not consider that as a cause of the accident.
As he fell from the very first step, it is obvious that
the worn or defective condition of other steps than
that upon which he stepped could have had no bear-
ing on the case.

The principal contention of the plaintiff is in con-
nection with the charge of the court as to the duty

resting upon the defendant as the owner of the tene-
ment house to keep the hallways lighted, under General
Statutes, § 2566. On this subject, the court, after
stating to the jury that it was not disputed in the
testimony that the defendant placed lights at the head
of the flight of stairs on the second and third floors,
and that these lights were connected to a separate
meter in the basement at the defendant's expense,
went on to say: "In this respect, the defendant did
provide for the lighting of the public halls. The de-
fendant's whole duty did not end with providing the
fixtures and the bulbs connected with a meter, but it
was also her duty to use reasonable care and diligence
to keep the lights in the fixtures lighted." The plain-
tiff assigns error in this statement, his claim being that,
under the statute, the defendant was obligated to keep
the lights lighted at night. Doubtless, in many States
the statutes require lights in public hallways in tene-
ment houses to be kept burning. *Schindler* v. *Welz &
Zerweck,* 145 App. Div. 532, 130 N. Y. Sup. 344, 345;
*Pesin* v. *Jugovich,* 85 N. J. L. 256, 88 Atl. 1101, 1102;
*Vallen* v. *Cullen,* 238 Mass. 145, 130 N. E. 216, 217;
note, 25 A. L. R. 1312. Under those statutes, the
failure to keep lights burning in hallways, if the
proximate cause of the injury, would be actionable
negligence. Our statute employs different language;
it states: "The owner of each tenement house shall
provide for lighting of all public halls at night." In
*Gibson* v. *Hoppman,* 108 Conn. 401, 405, 143 Atl. 635,
we stated that the statute "plainly contemplates that
the occupants of such tenement houses and others
having lawful occasion to traverse the public halls
therein shall be safeguarded by light maintained
therein by the landlord instead of leaving such lighting
dependent upon the will of the tenants of the respec-
tive floors." Our statute, by the phrase "provide for

lighting," makes it incumbent upon the owner of the tenement to make provision for lighting the public hallways therein at night. It does not require the owner to see to it that the lights shall remain on throughout the night in any event, as is the case with the statutes in many States. We cannot construe our statute as imposing upon the landlord any duty other than that of using reasonable care and diligence to keep the lights lighted. If the legislature had intended to impose such an onerous burden upon the owner of buildings, it would have employed language of unmistakable meaning. If the landlord uses reasonable care and diligence to provide for the lighting of public halls, and to keep them in operation during the night, he cannot be held to have been negligent. In the present case, it was a matter of dispute how long the lights had been out that evening; the plaintiff claiming that they were out at four o'clock that afternoon, and the defendant that they were still burning at seven-thirty o'clock that evening. It was not claimed that the defendant had any actual knowledge before the accident that the lights were out. The cause of their going out was a blown fuse; the defendant claimed the fuse was caused to blow by the occupant of the apartment where the plaintiff resided having connected her washing machine with a hall light fixture, overloading the circuit and blowing the fuse in the hall lights. The trial court properly submitted to the jury the question, as one of fact, whether the defendant had used due care and diligence in providing for the lighting of the hallways in the tenement under the circumstances, and did not err in its statement of the duty resting upon the defendant.

The plaintiff assigns error in the failure of the court to include in the charge certain specific statements. In part, these claims of error are disposed of by what we

have said. As to the others, two fall within our rule that if the charge as given includes a correct statement of the principles of law involved, was adapted to the issues and sufficient for the guidance of the jury, the failure to include specific instructions upon special features of the case would not be reversible error, where no requests to charge were made. *Quackenbush* v. *Vallario,* 114 Conn. 652, 656, 159 Atl. 893. The remaining two claims of error proceed upon the assumption that there was evidence from which the jury could reasonably find that the tenants of the building were the agents of the defendant in seeing to the lighting of the halls, but the record contains no substantial evidence in support of that contention.

There is no error.

In this opinion the other judges concurred.