VICTOR U. TOCCHETTI, ADMINISTRATOR (ESTATE OF
MADELINE C. TOCCHETTI) *v.* THE CYRIL AND
JULIA C. JOHNSON MEMORIAL HOSPITAL, INC.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued October 8, 1943—decided March 10, 1944.

*Donald C. Fisk,* for the appellant (plaintiff).

*Cyril Coleman,* for the appellee (defendant).

ELLS, J. This is an action for damages for the death of the plaintiff's intestate, a baby, allegedly caused by the negligence of the defendant hospital, a charitable corporation, in using faulty, worn out, defective and discarded equipment, in failing to inspect the equipment, and in using a hot-water bag it knew to be defective. The defendant filed a general denial, and pleaded charitable immunity in a special defense. There was a verdict for the defendant. The plaintiff has appealed, claiming errors in the charge.

The principal facts are not in dispute. The baby was born at the hospital on May 26, 1942. In the early morning of June 5 an experienced graduate nurse, who had been in charge of the nursery for eleven years, noticed that the nursery seemed cold, and attempted to use an auxiliary electric heater provided for the purpose of giving additional heat when needed, but found it to be out of order. She then obtained a hot-water bag which was hanging on a nail in the utility closet across the hall from the nursery. The closet was lighted by a 25-watt electric light bulb. Although she did not notice it at the time, the bag had a v-shaped tear at least an inch long in the upper third, on the flat surface, of it. She partially filled the bag with hot water, none of which escaped while the bag was in her hands. She squeezed and crumpled that portion of the bag which was not filled with water, in order to expel the air therefrom, and then inserted the stopper and placed the bag at the foot of the baby's bassinet. The hot water leaked out of the hole, severely burning the baby, and as a result she died on June 9 of toxemia or poisoning from the burns.

About two weeks prior to June 5 a nurse in the employ of the hospital had found this bag, in the same defective condition, in the same utility closet, and, knowing that the bag was beyond repair and unfit for normal use, she threw it into a trash can in the closet without otherwise destroying it, and without replacing it.

The defendant is a public charitable corporation. Its hospital rules do not contain specific regulations concerning the furnishing, maintenance or use of small equipment and supplies for hospital purposes, or any detailed rules concerning the inspection thereof or the destruction of faulty equipment. It has a board of trustees, and an executive committee consisting of three trustees which has general charge of the internal affairs of the hospital under authority conferred by the trustees. This committee has not formulated detailed rules concerning the purchase, maintenance and supply of small equipment, the inspection of it at regular intervals, or the destruction of faulty equipment. The duty of purchasing such equipment was left to the superintendent, whose competency is not in question. It was the custom and practice of the superintendent, and, under her, the nurses, to attend to the caring for and inspection of the smaller items of medical equipment, including hot-water bags. After the original acquisition, it was left to the particular nurse who happened to use a hot-water bag to inspect it before using it. It was also the custom and practice of the defendant hospital to allow the superintendent, and, under her, the nurses, to discard such defective equipment not reasonably susceptible of repair, when found by them, and to replace it. The hospital had no specific rule for the destruction of defective equipment.

The defendant's claims of proof as to the matters involved in this appeal are essentially the same as stated

above, except that the hospital rules followed the ordinary and usual custom obtaining in hospitals generally, and that hospitals customarily do not provide for routine inspection of small equipment, for the reason that doctors and nurses are trained not to rely on the inspection of another person but rather to make their own inspection at the time they use each piece of equipment.

There is no claim of proof that perfect hot-water bags were not available to the nurse on the morning in question.

It has long been the law of this state that a public charitable hospital is not liable for injuries sustained by a patient as a result of the negligent conduct of physicians and nurses employed by it, in the selection of whom it exercised due care. *Hearns* v. *Waterbury Hospital*, 66 Conn. 98, 123, 33 Atl. 595. In *Cohen* v. *General Hospital Society*, 113 Conn. 188, 198, 154 Atl. 435, we said that the *Hearns* decision was in accord with the great weight of authority both in England and this country, but held that, where the plaintiff was not a patient of the hospital but at most an invitee who had gone there to take a patient home, the defendant hospital owed him the duty which any landowner owes to an invitee who comes upon the premises. In *Cashman* v. *Meriden Hospital*, 117 Conn. 585, 587, 169 Atl. 915, we were asked to reconsider the position we took in the *Hearns* case. We said: "The courts are practically agreed that a charitable institution is not responsible to those who avail themselves of its benefits for any injuries that may be sustained through the negligence or torts of its managers, agents and servants." We repeated this statement in *Boardman* v. *Burlingame*, 123 Conn. 646, 653, 197 Atl. 761.

It is apparent that if there was negligence in the instant case, but the negligence was that of a nurse

or of the superintendent, the plaintiff cannot recover damages from the defendant hospital. The plaintiff claims, however, that the complaint alleges, and the claims of proof tend to prove, (1) administrative negligence in failing to supply, maintain and use suitable equipment, as distinguished from liability for the negligent conduct of nurses or doctors in the administration of personal attention to patients; and (2) the negligent performance or nonperformance by a nurse of a nondelegable duty of the hospital corporation, as distinguished from negligent performance of a nurse's own duty as such. This distinction is well illustrated by comparison between the *Cashman* case, supra, and this one. In each the injury arose from a hot-water bag, but in the former the claimed delict was the use of water which was too hot, but contained in a serviceable bag, while here it is the maintenance and provision for use, by the corporation, of a defective bag, which leaked and caused the injury.

Error is assigned only in that the court's instructions concerning these claims were inadequate and incorrect in law. The court accurately stated the claims of negligence contained in the complaint and then instructed the jury that the defendant was not liable for any personal negligence of a doctor or nurse or superintendent, and that the jury must consider only the question whether the plaintiff had proven what is called "corporate" negligence in one or more of the ways alleged in the complaint. It defined personal negligence as an act of negligence done on the person's own responsibility and of his own motion, as distinguished from an act, even though negligent, done by, because of, and in conformity to, the direction of the board of trustees or the executive committee. It defined corporate negligence, as to this case, as negligence on the part of the board of trustees, acting as a board, or negligence on

the part of the executive committee, acting as such committee within the scope of authority granted to it by the board of trustees. "This is because the defendant, as a corporation, can act only through the instrumentality of human beings, and, under its charter and by-laws its duty as far as the issues of this case are concerned, was so performed by its board of trustees and the executive committee thereof." The plaintiff cannot reasonably complain of these instructions.

The court then proceeded to define the duty of the defendant, acting by its board of trustees, and of the executive committee, in the matters committed to it by the board, to a patient in the hospital, and said: ". . . this duty is to exercise reasonable care or due care, in view of the functions of the hospital and the dangers reasonably to be anticipated in their performance, to have and to use reasonably safe equipment and instrumentalities and appliances in the hospital. This includes the duty to make provision for, by rules and regulations or otherwise, the inspection, discovery and disposal of faulty equipment, instrumentalities and appliances if, and insofar as, and to the extent that, you find that the making of such provision is involved in its corporate duty of exercising reasonable care, in view of the functions of the hospital and the dangers reasonably to be anticipated in their performance, to have and to use reasonably safe equipment, instrumentalities and appliances in its hospital. This duty is nondelegable. That is, the defendant, through its board of trustees, must carry it out or see that it is carried out. If it chooses to turn its performance over to someone else and the duty of the defendant is not performed, then in the eyes of the law the board has not performed that duty, and the defendant corporation will be chargeable with corporate negligence for such nonperformance. But for the personal negligence of

an employee the defendant is not, and is not claimed to be, liable. In other words, the board of trustees could either perform this duty itself, or it could delegate its performance to the executive committee, to the superintendent, or to anyone else, but if it did see fit so to delegate the performance of this duty to its paid employees, their performance of this duty is its performance and their failure to perform this duty is its failure to perform. On the other hand, if the persons to whom this duty was delegated performed it, there is no liability on the part of the corporation whether or not the nurse was personally negligent in filling the hot-water bottle without first noticing the hole in it, or whether any other employee was guilty of personal negligence regardless of the consequences of such personal negligence."

The court then discussed the first claim of negligence, that the defendant failed to have adequate specific rules regarding the placing and disposition of worn out equipment. It reviewed the claims of the parties on this point and said the questions were whether or not the defendant through its board of trustees or executive committee, in the performance of the duty resting upon it, should have made any rule as to the disposal of defective bags other than to provide for putting them in the trash can in the utility closet, and should, in the performance of its corporate duty, have anticipated that a hot-water bag, if put into a trash can in the closet, would get back into place on the nail in the closet. The jury were then told that, if they found corporate negligence in this respect, they must next consider whether it was a proximate cause of the burns; this portion of the charge is not challenged.

As to the claim that the defendant violated its duty in that it did not make adequate provision by rule or

otherwise for the inspection of the hospital equipment, the court stated that according to the testimony the whole matter of inspection, as far as hot-water bags were concerned, was left to the particular nurse who happened to use such a bag "and your question is whether or not this system constituted a performance, by the defendant, of its corporate duty as I have defined that duty." It reviewed the testimony as to the system of inspection used in the hospital and as to the general practice in similar hospitals, and said, ". . . your question will remain: Was this method of inspection, whether or not it was the best, a sufficiently good system so that it constituted reasonable care on the part of the board of trustees and executive committee, in view of the functions of the hospital and the dangers reasonably to be anticipated in their performance, to have and use reasonably safe equipment, instrumentalities and appliances, insofar as the element of inspection is concerned?" Further passages in the charge discussed the question under consideration.

The charge was, if anything, too favorable to the plaintiff. The issues raised by him were left to the jury to decide as questions of fact, under instructions of which he cannot complain.

The remaining claims have no merit and require little discussion. The court's charge on the claim that the defendant corporation knew that the bag was defective and did not destroy it, but continued to use it, was so favorable to the plaintiff that little is said about it in the brief. The court did not submit to the jury the claim concerning the defective auxiliary heater in the nursery for the sufficient reason that there was no evidence, insofar as the claims of proof disclose, on how long it had been out of order. The only claim was that on the morning of June 5 it could not be used.

The corporation could not be charged with negligence unless it failed to take steps to have the heater repaired after it knew or should have known of its defective condition. *Sheehan* v. *Sette,* 130 Conn. 295, 33 Atl. (2d) 327; *Iudica* v. *DeNezzo,* 115 Conn. 233, 161 Atl. 81. The jury returned and asked a question. The court restated a part of its charge, and gave an illustration not subject to reasonable criticism.

There is no error.

In this opinion the other judges concurred.