JAMES D. EVANS, ADMINISTRATOR (ESTATE OF JOAN
D. EVANS) *v.* LAWRENCE AND MEMORIAL ASSOCI-
ATED HOSPITALS, INC.

MALTBIE, C. J., JENNINGS, ELLS, DICKENSON and INGLIS, JS.

Argued November 6—decided December 19, 1946

*Cyril Coleman,* for the appellant (defendant).

*William J. Willetts,* with whom, on the brief, was *George C. Morgan,* for the appellee (plaintiff).

JENNINGS, J. This case concerns the well-worn question of the liability of an eleemosynary corporation for the negligent acts of its employees. Six newborn infants were fed a poisonous solution of boric acid, negligently prepared, instead of dextrose. As a result five of them died and one suffered personal injuries. Actions were brought to recover damages for the death or injury to each of them. The cases were tried together and submitted on one record. The plaintiffs had verdicts which the trial court refused to set aside and the defendant appealed from that refusal and from the resulting judgments.

The jury reasonably could have found the following facts: The defendant is a charitable hospital containing about three hundred and twenty beds and employs a large staff of doctors, nurses and assistants of various kinds. Until about three weeks before the incidents of which complaint is made the formula for babies was made in the pharmacy and delivered to the maternity ward. In March, 1944, a new maternity wing was opened and thereafter the formula was made in the formula room of that wing.

The pharmacy was located in the basement. In addition to the pharmacy proper, or workroom, there were six rooms containing all sorts of supplies. Boric acid and dextrose, which look alike, were both purchased from the same concern, the containers were of similar cylindrical size and shape and were

labeled, and on the boric acid label were the additional words in small type "for external use only." Both containers were kept on the floor in the pharmacy proper about four feet apart. Boric acid is a poison and may be fatal to newborn babies if taken internally.

The pharmacy was in charge of Paula Machnik, a competent pharmacist. She found the work too heavy and requested Mr. Hancock, the administrator of the hospital, for assistance. He spoke to the housekeeper, and she assigned Henry Lindner to report to the pharmacy every day between 10 and 12 o'clock to help there. The housekeeper had hired Lindner about a year before to act as porter and handyman and he was still acting as such. While in the pharmacy, Lindner did what the pharmacist told him to do. His first work, for example, was to boil soap. He carried packages, washed bottles and filled containers, when directed to do so, with such bulk supplies as talcum powder, green soap, mouthwash, witch hazel, lysol and mineral oil.

Under hospital routine, in effect at the defendant hospital, newborn infants were given a feeding of 5 per cent dextrose solution. When the new maternity wing was opened, the pharmacist filled a large bottle with dextrose, labeled it and sent it to that wing. The various departments of the hospital had so-called supply days (Monday and Thursday for the maternity department) when they sent various containers to the pharmacy in large baskets with order books indicating the material requisitioned. On Thursday, April 6, the dextrose bottle was nearly empty and was sent to the pharmacy to be refilled. It was filled with boric acid and its use in the formu-

la resulted in the death of the five babies and in the injuries to the sixth.

The evidence as to who filled the bottle with boric acid was a matter of inference from the testimony. The jury reasonably could have concluded that the requisitioned material for the maternity wing on the day in question was supplied by either the pharmacist or Lindner, that in view of her training and experience it was not probable that the pharmacist would have mistaken boric acid powder for dextrose and that, therefore, in spite of his categorical denial, Lindner did fill it. The right of a trier to draw reasonable inferences has wide application. *Ruerat* v. *Stevens,* 113 Conn. 333, 338, 155 A. 219; *Dumochel* v. *Becce,* 119 Conn. 175, 177, 175 A. 569; *Esserman* v. *Madden,* 123 Conn. 386, 388, 195 A. 739; *Naumann* v. *Wehle Brewing Co.,* 127 Conn. 44, 46, 15 A. 2d 181; *White* v. *Herbst,* 128 Conn. 659, 661, 25 A. 2d 68.

The liability of a charitable hospital has been considered in the following Connecticut cases: *Hearns* v. *Waterbury Hospital,* 66 Conn. 98, 33 A. 595; *Bunnell* v. *Waterbury Hospital,* 103 Conn. 520, 131 A. 501; *Cohen* v. *General Hospital Society,* 113 Conn. 188, 154 A. 435; *Cashman* v. *Meriden Hospital,* 117 Conn. 585, 169 A. 915; *Boardman* v. *Burlingame,* 123 Conn. 646, 197 A. 761; *Lorenc* v. *Hartford Hospital,* 127 Conn. 194, 15 A. 2d 313; *Edwards* v. *Grace Hospital Society,* 130 Conn. 568, 36 A. 2d 273; *Tocchetti* v. *Johnson Memorial Hospital,* 130 Conn. 623, 36 A.2d 381; *Haliburton* v. *General Hospital Society,* 133 Conn. 61, 48 A. 2d 261. This long list has been made to show that this court has explored the subject in all its ramifications, requiring no repetition here; to demonstrate the increasing frequency with which the principles underlying liability are being brought up

for review; and because the decisions cited analyze most of the leading cases on the subject. The authorities are collected in a note, 133 A.L.R. 821, in the other annotations therein referred to, and in 11 C.J. 377, 14 C.J.S. 550, 34 Yale L.J. 316, and 10 Am. Jur. 692. See also a penetrating analysis by Professor McCaskill in 6 Cornell Law Quarterly 56, 62.

There were two possible bases of liability as the case was submitted to the jury: First, was the defendant negligent in the selection of its agents and servants? Second, was it guilty of corporate negligence in failing to provide in the pharmacy proper facilities, safeguards and surroundings?

It is the settled law of this state that a charitable corporation is not liable for the negligence of employees whom it has selected with due care. *Edwards* v. *Grace Hospital Society*, supra, 572; *Haliburton* v. *General Hospital Society*, supra, 64. Recent attempts to secure a reversal of this general principle have been unavailing. *Cashman* v. *Meriden Hospital*, supra, 587; *Boardman* v. *Burlingame*, supra, 652. Nothing in the case at bar requires a change or modification of that principle.

Negligence on the part of the competent pharmacist would not be a basis of liability. Assuming that the jury reasonably could have found that Lindner filled the dextrose bottle with boric acid, the same principle would apply. *Phillips* v. *Buffalo General Hospital*, 239 N. Y. 188, 190, 146 N. E. 199. There was no evidence from which the jury reasonably could have found that the hospital did not use due care in selecting him as a competent handyman or in assigning him to do the kind of work for which he was hired under the direction and supervision of the competent pharmacist. To paraphrase a rele-

vant statement in *Edwards* v. *Grace Hospital Society,* supra, 573, the most that the evidence tended to show was that the pharmacist improperly directed or permitted Lindner to fill the container. That is far from proving that the corporation or its board of directors failed to use due care in selecting their employees.

The trial court should not have submitted the question whether the defendant failed to provide proper facilities and safeguards in the pharmacy to the jury. All of the evidence was to the effect that the pharmacy was set up in accordance with standard practice, and there was no evidence to the contrary. No written rules for its conduct had been prescribed, but there was no evidence that standard practice required this or that their existence would have changed the situation. The motion to set aside the verdict should have been granted.

In view of this conclusion, there is little in the appeal from the judgment which requires mention. The foregoing discussion negatives the claim of the defendant that charitable immunity protects a hospital even against true corporate neglect.

The trial court charged the jury with reference to the nondelegable duties of the hospital. It said, in this connection: "This includes the duty to make provision for the inspection and use of all drugs, food, equipment and appliances, and the report of anything unusual, uncommon or serious if, and insofar as, and to the extent that you find the making of such provision is involved in its corporate duty of exercising reasonable care, in view of the functions of the hospital, and the dangers reasonably to be anticipated in their performance." This was entirely too broad a statement because it made the most triv-

ial duties in connection with the running of the hospital nondelegable and possible bases of liability. If applied, it would practically eliminate the doctrine of the charitable immunity of a hospital. This statement was apparently based on the charge in *Tocchetti* v. *Johnson Memorial Hospital,* supra, 628, and, like that, was too favorable to the plaintiff.

The defendant also claims that judgment for it should be directed non obstante veredicto. This remedy is not available when the error is in the denial of the motion to set aside the verdict and the allegations of the complaint, if proved, would justify a recovery. *Edwards* v. *Grace Hospital Society,* supra, 575.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.