ANN BUCKLEY *v.* FRANK LOVALLO ET AL.
(2372)

DANNEHY, C.P.J., DUPONT and BORDEN, Js.

Argued May 1—decision released September 18, 1984

*Richard Fuchs,* with whom, on the brief, was *Brenda C. Morrissey,* for the appellant-appellee (plaintiff).

*Thomas L. Brayton,* for the appellee-appellant (defendant Frank Lovallo).

*Herbert J. Shepardson,* with whom, on the brief, was *Joseph Adinolfi, Jr.,* for the appellee (defendant Sharon Hospital, Inc.).

BORDEN, J. This is a medical malpractice action brought by the plaintiff against Frank Lovallo, a general surgeon, and Sharon Hospital. The plaintiff appeals[1] from the judgment, claiming error in the direc-

---

tion of the verdict for the hospital, and in an evidentiary ruling and the jury charge affecting damages. Lovallo cross appeals claiming insufficiency of the evidence against him. We find error only on the plaintiff's appeal regarding the issue of damages.

The jury could reasonably have found the following facts. The plaintiff sought a breast reduction operation after losing approximately seventy pounds. Her breasts, even after the weight loss, remained heavy and pendulous. She suffered pain and had deep ridges on her back where her brassiere straps cut into her shoulders. She had difficulty finding clothes that fit, and felt topheavy.

The plaintiff sought the advice of Robert I. Scileppi, a plastic surgeon in Poughkeepsie, New York, who told her that an operation was medically indicated but recommended that she see her regular physician before going forward with the operation. She went to see her regular physician who recommended that a local doctor, Lovallo, perform an operation. After an examination by Lovallo and a discussion of the operation and fees with him, the plaintiff decided to have Lovallo perform the operation. Lovallo told the plaintiff he had performed this operation many times, that her breasts would be "contoured fine" and that her nipples would be reduced in size to conform to the new size of her breasts. Lovallo performed a bilateral reduction mammoplasty using a Conway-type procedure, which resulted in visible welt-like scars above the inframammary crease, flat and misshapen breasts, and overlarge nipples which were insensate and misplaced. The plaintiff suffered adverse psychological reactions to these physical conditions.

The trial court directed a verdict for the hospital and denied the plaintiff's motion to set aside this verdict. The claim against Lovallo was submitted to the jury

which returned a plaintiff's verdict for $30,000. The plaintiff moved for an additur and to set the verdict aside as to damages only. These motions were denied. Lovallo moved for a judgment notwithstanding the verdict, which the court denied.

I

The court correctly granted the hospital's motion for a directed verdict. The plaintiff's claim against the hospital was based on the theory of corporate negligence. Her claim was in essence that the hospital was negligent in failing to promulgate rules and regulations, in granting surgical privileges to Lovallo which permitted him to perform a procedure which he was unqualified to perform, and in failing to evaluate and monitor his professional competence. She argues that she produced sufficient evidence to permit these claims to go to the jury. We disagree.

Corporate negligence is the failure of the officers or directors who constitute the governing board of a corporation, acting as a board, to maintain the standard of conduct required of the particular corporation, rather than the personal negligence of the corporation's ordinary employees. *Bader* v. *United Orthodox Synagogue,* 148 Conn. 449, 452–53, 172 A.2d 192 (1961); *Tocchetti* v. *Johnson Memorial Hospital,* 130 Conn. 623, 627–28, 36 A.2d 381 (1944). Pursuant to her complaint, the plaintiff was required to produce expert testimony of the standard of care applicable to similar hospitals similarly located, and expert testimony that the hospital's conduct did not measure up to that standard. *Pisel* v. *Stamford Hospital,* 180 Conn. 314, 334–35, 430 A.2d 1 (1980); *Parowski* v. *Bridgeport Hospital,* 144 Conn. 531, 534, 134 A.2d 834 (1957); *McDermott* v. *St. Mary's Hospital Corporation,* 144 Conn. 417, 422, 133 A.2d 608 (1957). The failure of a hospital to have written rules for its conduct is insufficient to establish a viola-

tion of the standard of care in the absence of a proper showing that having such rules is the standard practice. *Evans* v. *Lawrence & Memorial Associated Hospitals, Inc.,* 133 Conn. 311, 316, 50 A.2d 443 (1946).[2]

The evidence presented here was insufficient to establish a standard of care applicable to the hospital or to establish that any such standard was violated. The plaintiff argues that the testimony of Paul Sternlof, the executive director of the hospital, was sufficient to establish the required standard of care. This argument is without merit. Sternlof testified to the standards of the Joint Commission on Accreditation of Hospitals (JCAH), a voluntary accrediting organization to which the hospital belonged and which had accredited the hospital, and to the regulations of the hospital and its medical staff. His testimony is bereft, however, of any suggestion that these standards and regulations constituted a standard of care applicable to similar hospitals similarly located, or that the hospital's conduct here failed to meet any such standard. Cf. *Pisel* v. *Stamford Hospital,* supra, 335–39. Indeed, his testimony was that the criteria of the hospital, at the time of the operation by Lovallo, for the granting of surgical privileges were usual, customary and historic.

The evidence, therefore, failed to establish the standard of care applicable to the hospital or a breach of any such standard. A directed verdict is appropriate "when the jury could not reasonably and legally have reached any other conclusion." *Sestito* v. *Groton,* 178 Conn. 520, 522, 423 A.2d 165 (1979).

---

[2] The plaintiff suggests that we follow *Darling* v. *Charleston Community Memorial Hospital,* 33 Ill. 2d 326, 211 N.E.2d 253 (1965), where, without supporting expert testimony, the hospital's own regulations and the standard of accrediting agencies were permitted to define the duty of care. This rule was subsequently limited in application to exceptional circumstances; see *Collins* v. *Westlake Community Hospital,* 12 Ill. App. 3d 847, 299 N.E.2d 326 (1973); and, in any event, is contrary to the prevailing rule in Connecticut.

## II

The evidence presented against Lovallo was sufficient to be presented to the jury and thus his motion for a directed verdict was properly denied. The plaintiff was required to establish, through expert testimony, the standard of care to which this defendant was to be held and a violation of that standard. *Pisel* v. *Stamford Hospital,* supra, 334. Lovallo claims that the evidence produced by the plaintiff was insufficient to establish the applicable standard of care or that a violation of that standard proximately caused the plaintiff's injuries. We disagree.

The duty of care to which a physician is held in a malpractice action is "that degree of care, skill and diligence which physicians in the same general neighborhood and in the same general line of practice ordinarily possess and exercise in like cases." *Fitzmaurice* v. *Flynn,* 167 Conn. 609, 616, 356 A.2d 887 (1975), quoting *Snyder* v. *Pantaleo,* 143 Conn. 290, 292, 122 A.2d 21 (1956).[3] Expert testimony to establish this standard is required; *Fitzmaurice* v. *Flynn,* supra; but the qualifications of the expert witness are not measured by whether the expert is in the same specialty as the defendant; id., 617; nor by whether the expert practiced in the locale where the incident occurred; *Pisel* v. *Stamford Hospital,* supra; but by whether the expert knows what the standard of care is in the locale where the defendant practices sufficiently for the witness to give an opinion as to the defendant's conformity with that standard. *Fitzmaurice* v. *Flynn,* supra, 618.

The plaintiff produced as expert witnesses two plastic surgeons who practice in New York in towns near Connecticut. Philip C. Bonanno testified as follows. He

---

[3] The "general neighborhood" has been enlarged to include not only Connecticut but the nation as a whole. *Logan* v. *Greenwich Hospital Assn.,* 191 Conn. 282, 301, 465 A.2d 294 (1983).

had performed seventy-five bilateral reduction mammoplasties prior to 1977 and was familiar with the standards for performing this operation in Connecticut as they were in 1977. Bilateral reduction mammoplasty falls into the realm of plastic surgery. He did not know of any general surgeons who performed the operation nor the standards they would use. The procedure which the defendant used to reduce the plaintiff's breasts was the Conway reduction mammoplasty with free nipple grafts, but, given the standards in Connecticut in 1977, a procedure more in keeping with the preservation of the aesthetic appearance of the breasts should have been used. The Weiss or Strombeck operative procedures with a McKissock procedure for transposition of the nipple should have been used. The procedure performed on the plaintiff was below the standard of care for performing the Conway procedure in 1977 and corrective surgery was required.

Robert I. Scileppi was the doctor whom the plaintiff initially consulted and to whom she returned after the unsatisfactory operation. He testified as follows. He had performed between fifty and sixty bilateral reduction mammoplasties from 1971 to 1981 and was familiar with the standard of care for doctors performing this operation in the general neighborhood of Sharon, Connecticut in 1977. The standards for performing this operation were the same among specialty groups, such as plastic surgeons and general surgeons. The Conway-type operative procedure was the incorrect procedure to be used on the plaintiff, and the results of this procedure show a deviation from the standard of care. While he personally does not like the Strombeck procedure, and uses a modified version of the McKissock procedures himself, use of the Strombeck procedure or a modification of that procedure would have been acceptable by a plastic surgeon in 1977. There were twenty-five recognizably different procedures for breast reduc-

tion developed since 1923, but the plaintiff did not fall into the category of women, usually older, who require a Conway-type operation.

A verdict should be directed "only when the jury could not reasonably and legally have reached any other conclusion." *Sestito* v. *Groton,* supra, 522. Taking the testimony of Bonanno and Scileppi together, the jury could have found that it was negligent for Lovallo to have performed the Conway-type procedure and, further, that he did not properly employ the technique called for under that procedure. Thus, the jury could reasonably have found that the defendant was negligent in performing the wrong operation and in performing it improperly, and that his negligence proximately caused the plaintiff's injuries. Lovallo's motion for judgment notwithstanding the verdict, like the motion for a directed verdict, was correctly denied.

### III

The plaintiff claims that three errors improperly affected the amount of damages awarded by the jury: the exclusion of evidence showing a causal connection between the breast surgery and a subsequent suicide attempt by the plaintiff; the standard by which the trial court instructed the jury to gauge the plaintiff's claim of mental suffering; and a claimed misstatement of the evidence by the court in its charge on lost earning capacity. We find error on the first two claims. This renders it unnecessary for us to consider the third claim, since, although it appears to have merit, the claimed error is not likely to recur.

### A

The court excluded opinion testimony by Edwin Dawe, a psychiatrist, on the causal relationship between a suicide attempt by the plaintiff in 1978 and the breast surgery, and it refused to admit a hospital bill for the

plaintiff's treatment after the suicide attempt. The basis of the ruling was that this evidence was beyond the scope of the plaintiff's complaint. We disagree.

The plaintiff alleged that "[s]evere psychological sequelae" resulted from the defendants' negligence. A suicide attempt could reasonably be considered as a severe psychological result of the breast operation, and so was adequately pleaded. The defendants were aware of the suicide attempt through discovery proceedings, and do not claim surprise by the attempt to introduce the evidence relating to it. See *Bruneau* v. *Quick,* 187 Conn. 617, 625, 447 A.2d 742 (1982). "[S]light linguistic ambiguity" in the pleadings should not, under modern pleading rules, deprive parties of the opportunity to provide proof on issues adequately raised in the pleadings and of which the parties are apprised. *Schenck* v. *Pelkey,* 176 Conn. 245, 255, 405 A.2d 665 (1978); cf. *Plawecki* v. *Angelo Tomasso, Inc.,* 1 Conn. App. 48, 53, 467 A.2d 944 (1983).

This evidence, if believed, could have affected the amount of the award of damages. The ruling of the court excluding this evidence was harmful error.

### B

The court charged the jury with respect to compensation for mental suffering, in part, as follows: "A plaintiff injured by the wrongdoing of another is just as much entitled to be compensated for mental suffering thereby, and the results that would approximately [sic] follow from it, as well as physical suffering. *From the nature of the evidence in support of such suffering, however, it is difficult to prove or disprove its existence or extent with certainty, and there is always the possibility that there is no real basis for the claim or that the suffering, to a greater or lesser extent, is exaggerated. For that reason, you should scrutinize with care the evidence offered and approach the matter with caution.* But

if you are satisfied that a fair preponderance of the evidence supports the claim, the plaintiff is entitled to be compensated for mental distress and suffering." (Emphasis added.)

The court, in effect, instructed the jury, by the language italicized above, to apply a more exacting gauge to the plaintiff's claims of mental suffering than to those of physical suffering. This was error.

The language of this jury charge apparently derives from *Orlo* v. *Connecticut Co.,* 128 Conn. 231, 21 A.2d 402 (1941), which the defendant argues represents the current state of our law applicable to the facts of this case. We disagree.

*Orlo* was the seminal case in Connecticut permitting, for the first time, recovery for negligently caused emotional distress, even though no physical impact or injury occurred at the time of the infliction of that distress, as long as the plaintiff was within the range of physical danger. Id., 239. The *Orlo* court advised that courts and juries use caution, scrutinize evidence of mental suffering with care, and allow such recovery only upon clear and satisfactory proof. Id., 240–41. Such cautionary language and strict scrutiny might have been fitting at the time *Orlo* was decided because a new theory of recovery was being established. This theory, however, has been expanded; see, e.g., *Montinieri* v. *Southern New England Telephone Co.,* 175 Conn. 337, 398 A.2d 1180 (1978) (recovery for unintentionally-caused emotional distress does not depend on proof of physical injury or risk of physical harm); and recovery of this type is no longer revolutionary. Moreover, we are unaware of any Connecticut case in which the language of *Orlo* is either used or cited with approval, for claims of emotional distress flowing from physical injury, as is the case here.

"A plaintiff may recover damages in a personal injury action for pain and suffering even when such pain and suffering is evidenced exclusively by the plaintiff's subjective complaints." *Delott* v. *Roraback,* 179 Conn. 406, 409, 426 A.2d 791 (1980). We see no reason to subject a claim of mental suffering, which is ordinarily evidenced by subjective complaints, to stricter scrutiny or greater care than a claim of physical suffering evidenced by the same type of complaints. "[M]edical science has unquestionably become sophisticated enough to provide reliable and accurate evidence on the causes of mental trauma." *Culbert* v. *Sampson's Supermarkets, Inc.,* 444 A.2d 433, 436 (Me. 1982). Medical science and mental health fields have advanced sufficiently to enable a trier of fact to determine the extent of mental suffering by the same standard of proof as physical suffering. See *Wallace* v. *Coca-Cola Bottling Plants, Inc.,* 269 A.2d 117, 121 (Me. 1970). In today's world both supply equal grist for the jury's mill, based on "[t]he ordinary knowledge acquired from everyday experience by the jurors . . . ." Id., 122. A plaintiff need only establish a claim for mental or emotional distress by a fair preponderance of the evidence, unfettered by any additionally exacting gauge.

Although the court, at the end of the challenged portion of the charge, adverted to a burden of proof by a fair preponderance of the evidence, the gist of the charge clearly indicated that the jury should apply that standard more critically to the plaintiff's claims of mental suffering than to the rest of her case. The jury was likely, therefore, to have been misled as to the correct standard to use in determining damages for mental suffering. This charge constituted material error. *Gaul* v. *Noiva,* 155 Conn. 218, 220, 230 A.2d 591 (1967).

There is error in part on the plaintiff's appeal, the judgment in favor of the plaintiff is set aside and the

case is remanded for a new trial on the issue of damages only.

There is no error on the cross appeal.

In this opinion the other judges concurred.

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).