BENJAMIN NEFF *v.* JOHNSON MEMORIAL HOSPITAL
(AC 25321)

Flynn, Bishop and McLachlan, Js.

---

Submitted on briefs September 26, 2005—officially released February 7, 2006

*Susan K. Smith* and *Sanford J. Plepler* filed a brief for the appellant (plaintiff).

*Donna R. Zito*, *Stephen V. Manning*, *Michael G. Rigg* and *Rebecca M. Harris* filed a brief for the appellee (defendant).

*Opinion*

BISHOP, J. In this appeal, the plaintiff, Benjamin Neff, claims that the trial court improperly rendered summary judgment in favor of the defendant, Johnson Memorial Hospital (hospital), on the grounds that (1) no genuine issue of material fact existed as to whether

the hospital negligently credentialed Thomas Hanny, a physician, and (2) expert testimony was required to establish the standard of care for the claim of negligent credentialing.[1] We disagree and affirm the judgment of the trial court.

The following factual and procedural history is pertinent to our discussion of the issues on appeal. In his complaint, the plaintiff alleged, in sum, that on February 24, 2000, he was admitted to the hospital by his physician, Hanny, to undergo a vascular bypass to treat a foot infection, that Hanny performed three amputations on him while at the hospital and that although the hospital discharged him on April 26, 2000, Hanny continued to treat him until July 17, 2000. The plaintiff claimed that he suffered harm as a consequence of Hanny's treatment.

The plaintiff also claimed that the hospital is a public hospital located in the town of Stafford Springs, where it is engaged in the provision of health care services, and that the defendant had a duty to its patients to use reasonable care in the granting of staff privileges to physicians. Finally, the plaintiff alleged in his complaint that the hospital breached that duty of care by allowing Hanny to continue treating patients on the premises of the hospital when he did not have medical malpractice insurance and by recertifying him as a member of its staff without adequately investigating the three medical malpractice claims brought against him between 1995 and 1999.

After discovery, the hospital filed a motion for summary judgment on October 28, 2003,[2] and a supplemen-

[1] The plaintiff instituted a separate action against Hanny in November, 2001.

[2] The plaintiff moved for and was granted additional time to conduct discovery.

tal motion for summary judgment on February 20, 2004.[3] The court granted the motion on the ground that the hospital could not be held liable for negligently credentialing Hanny because at the time of credentialing and at the time of the alleged injury, Hanny had malpractice insurance. The court also held, as to the general claim of corporate negligence against the hospital regarding the recertification of Hanny, that as a matter of law, the plaintiff was required to disclose expert testimony to establish the applicable standard of care of a hospital in credentialing its physicians. The court held that the hospital was entitled to summary judgment because the only expert witness disclosed by the plaintiff failed to address the core claim of corporate negligence.[4] This appeal followed.[5]

On appeal, the plaintiff claims that the court improperly granted summary judgment in favor of the hospital on the grounds that (1) no genuine issue of material fact existed as to whether the hospital negligently credentialed Hanny and (2) expert testimony was required on the standard of care for the plaintiff's claim of negligent credentialing. Because those issues are intertwined, we discuss them together.[6]

[3] The hospital sought summary judgment on the grounds that no genuine issue of material fact existed because (1) the plaintiff conceded that the hospital made no misrepresentations regarding retaining Hanny as a vascular surgeon, (2) Hanny's testimony proved that he had full malpractice insurance coverage at the time he operated on the plaintiff, (3) the hospital owed no duty to the plaintiff to ensure that staff physicians followed its bylaws and (4) the plaintiff failed to disclose an expert witness to testify as to the alleged medical malpractice of Hanny, the alleged corporate negligence of the hospital, and the causal connection between the hospital's alleged negligence and the plaintiff's injuries.

[4] The court declined to address the remaining grounds for summary judgment, having decided in favor of the hospital on the grounds, as noted, that the undisputed evidence demonstrated that Hanny did, in fact, have malpractice insurance at the relevant time periods and that the plaintiff's claims of corporate negligence required expert testimony.

[5] Additional facts will be referenced as necessary.

[6] The plaintiff attempts to assert on appeal three additional issues that are not reviewable by this court. First, the plaintiff alleges that a genuine

The plaintiff claims that the court improperly held that expert testimony was required to establish the standard of care for his claim of corporate negligence against the hospital. The gravamen of the plaintiff's claim on appeal is that the court improperly held that expert testimony was required on the issue of whether

issue of material fact exists as to whether the hospital negligently supervised Hanny. Specifically, the plaintiff alleges that the hospital was negligent in allowing Hanny to perform surgical procedures he was not privileged to perform. That claim is not subject to appellate review because it was not pleaded in the complaint. Indeed, a review of the record reflects that the claim was raised for the first time in the plaintiff's brief in opposition to the defendant's motion for summary judgment.

The plaintiff also asserts on appeal that the hospital was negligent in credentialing Hanny because it failed to follow its bylaws by exempting Hanny from the rule that all staff physicians be board certified. A review of the record reveals, however, that this issue was not asserted in the plaintiff's complaint or raised before the trial court. Consequently, we will not review the claim.

Finally, the plaintiff claims that the court improperly held that he could not rely on the expert disclosed by the plaintiff in a separate action the plaintiff filed against Hanny, *Neff* v. *Hanny*, Superior Court, judicial district of Tolland, Docket No. 77291. A review of the record reveals that the court did not, as claimed by the plaintiff, refuse to allow the plaintiff to rely on the expert disclosed in the action against Hanny.

To the contrary, a review of the record reveals that at the hearing on the motion for summary judgment, the plaintiff's counsel conceded that the sole expert witness against the hospital was Paul M. Adler, a physician, whose testimony would not concern the applicable standard of care for a hospital in granting staff privileges to physicians. Indeed, the basis of the plaintiff's claim, as argued at the hearing on the motion for summary judgment, was that no expert testimony was necessary to establish the applicable standard of care.

"[T]he principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint." (Internal quotation marks omitted.) *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 414, 867 A.2d 841 (2005). Furthermore, "[i]t is well settled that the trial court can be expected to rule only on those matters that are put before it. . . . With only a few exceptions . . . we will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Lawton* v. *Weiner*, 91 Conn. App. 698, 709 n.7, 882 A.2d 151 (2005). As such, we will not review those claims.

the hospital breached the applicable standard of care by credentialing Hanny even though he was a defendant in three previous malpractice actions.

As a preliminary matter, we identify the applicable standard of review and set forth the legal principles that guide our resolution of the plaintiff's claim. "The standard of review of a trial court's decision to grant a motion for summary judgment is well established. Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact." (Citations omitted; internal quotation marks omitted.) *O'Connor* v. *Board of Education*, 90 Conn. App. 59, 67, 877 A.2d 860, cert. denied, 275 Conn. 912, 882 A.2d 675 (2005).

A review of the evidence in the light most favorable to the plaintiff discloses the following facts as they relate to the hospital's credentialing of Hanny. Approximately seven months before Hanny admitted the plaintiff to the hospital, he had applied on July 23, 1999, for reappointment to the active staff of the hospital. Hanny disclosed on his application for reappointment that he had been a defendant in two medical malpractice suits between 1995 and 1996. Hanny also admitted during his deposition that a third medical malpractice case had been brought against him in 1998 and settled in

2000.[7] In 1999, the hospital reappointed Hanny to its staff. In October, 2000, Hanny's insurance policy terminated. At the time of credentialing and throughout the period of Hanny's treatment of the plaintiff, however, Hanny had medical malpractice insurance coverage.

The plaintiff commenced the present action on June 11, 2002, against the hospital. In his amended complaint, dated May 19, 2003, the plaintiff alleged that the hospital granted hospital privileges to Hanny and allowed him to treat patients at its facility when doing so created an unreasonable risk of harm to the plaintiff. Specifically, the plaintiff alleged that the hospital "violated its duty to the [p]laintiff by . . . failing to use reasonable care in having renewed staff privileges to . . . Hanny . . . who the hospital knew, or should have known, was lacking in the basic essentials for such re-certification to maintain staff privileges."

During discovery, the plaintiff disclosed one expert witness, Paul M. Adler, a physician. The court found that Adler testified during his deposition that "his only criticism of the hospital, with respect to Dr. Hanny, concerned the hospital's representation of Dr. Hanny's qualifications contained in the hospital's [Internet site]." The hospital's Internet site, however, was not accessible to the public until 2001, after the last date that Hanny treated the plaintiff. During discovery, the plaintiff did not identify any other expert witness to establish the standard of care or breach of any standard of care with respect to the credentialing of Hanny.

The court rendered summary judgment in favor of the defendant, holding that as a matter of law, "the hospital bears no liability for credentialing Dr. Hanny to perform surgical procedures at the hospital while lacking medical insurance because at the time of cre-

[7] We note that the record does not make clear whether at the time of credentialing the hospital knew of the third malpractice case.

dentialing, as well as at the time of the alleged injury to the plaintiff, Hanny had such insurance." The court also held, as to the remaining ground of corporate negligence regarding the credentialing of Hanny, that if a duty existed, expert testimony was required to establish that the hospital breached that duty. The court noted that the standard of care applicable to "a hospital in credentialing a vascular surgeon who has had complaints of malpractice lodged against him or her is neither obvious nor so compelling that laypersons can readily discern the proper course of conduct without expert guidance as to the standard of care. The interplay of the nature, number and strength of such complaints, whether the complaints need to be adjudicated by a professional or judicial tribunal before consideration by a hospital, and whether credentialing varies from specialty to specialty, depending on need or character of the practice under scrutiny, falls beyond the ken of the average fact finder."

On appeal, the plaintiff claims that the court improperly concluded that he was required to establish by expert testimony the applicable standard of care of the hospital in credentialing Hanny. The plaintiff claims that expert testimony was not required on the issue of whether the hospital was negligent in credentialing Hanny because the issue requires "common sense and do[es] not necessarily implicate the need for expert testimony." We disagree.

At the outset, we note that because the court's conclusion regarding the need for expert testimony to support the plaintiff's claim of corporate negligence against the hospital was a legal determination, our review is plenary. See *Santopietro* v. *New Haven*, 239 Conn. 207, 226, 682 A.2d 106 (1996); *O'Connor* v. *Board of Education*, supra, 90 Conn. App. 67. Moving to an assessment of the court's legal conclusion, we start by restating bedrock principles of negligence jurisprudence. "The essential

elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . Contained within the first element, duty, there are two distinct considerations. . . . First, it is necessary to determine the existence of a duty, and [second], if one is found, it is necessary to evaluate the scope of that duty." (Internal quotation marks omitted.) *LePage* v. *Horne*, 262 Conn. 116, 123, 809 A.2d 505 (2002).

"The existence of a duty is a question of law and [o]nly if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . . If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." (Citation omitted; internal quotation marks omitted.) *Santopietro* v. *New Haven*, supra, 239 Conn. 226.

"A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence." (Internal quotation marks omitted.) Id., 225. "[T]he fact finder must consider whether the defendant knew, or should have known, that the situation at hand would obviously and naturally, even though not necessarily, expose [the plaintiff] to probable injury unless preventive measures were taken." (Internal quotation marks omitted.) *LePage* v. *Horne*, supra, 262 Conn. 124. "If the determination of the standard of care requires knowledge that is beyond the experience of an ordinary fact finder, expert testimony will be required." *Santopietro* v. *New Haven*, supra, 239 Conn. 226.

In the present case, the plaintiff's claim sounds in corporate negligence.[8] "Corporate negligence is the fail-

---

[8] Because our classification of the plaintiff's claim is not pivotal to our disposition of the case, we analyze the plaintiff's claim as the trial court classified it, which was as a basic negligence claim. We note that the plain-

ure of the officers or directors who constitute the governing board of a corporation, acting as a board, to maintain the standard of conduct required of the particular corporation, rather than the personal negligence of the corporation's ordinary employees." *Buckley* v. *Lovallo*, 2 Conn. App. 579, 582, 481 A.2d 1286 (1984).

Under Connecticut law, to sustain a corporate negligence claim against a hospital, a plaintiff is generally "required to establish, through expert testimony, the standard of care to which [the] defendant [is] to be held and a violation of the standard." Id., 584. Specifically, the plaintiff is required to "produce expert testimony of the standard of care applicable to similar hospitals similarly located, and expert testimony that the hospital's conduct did not measure up to that standard." Id., 582; *Pisel* v. *Stamford Hospital*, 180 Conn. 314, 334–35, 430 A.2d 1 (1980); see also *Haliburton* v. *General Hospital Society*, 133 Conn. 61, 65, 48 A.2d 261 (1946) (expert testimony required to prove causation in corporate negligence action against hospital for actions of its dentist).

Albeit, in some corporate negligence cases, expert testimony is not always mandatory. See *Bader* v. *United Orthodox Synagogue*, 148 Conn. 449, 454, 172 A.2d 192 (1961). Our Supreme Court, in *Bader*, held that expert testimony was not required in a corporate negligence case against a charitable corporation to support the plaintiff's claim of a structural defect to a porch because that question did not "[go] beyond the field of the ordinary knowledge and experience of judges or jurors."

tiff's claim is akin to an allegation of professional negligence, "which we have previously defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services." (Internal quotation marks omitted.) *Santopietro* v. *New Haven*, supra, 239 Conn. 226; see also *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 562, 864 A.2d 1 (2005).

Id. The court noted that "[p]hotographs showing the conditions were admitted in evidence and available for the examination of the jury, who, by the application of their own knowledge and under proper instructions from the court, could determine without the aid of any expert whether the conduct of the defendant constituted corporate negligence." Id.; *DeColon* v. *Danbury Hospital*, Superior Court, judicial district of Danbury, Docket No. 303330 (December 22, 1992) (8 Conn. L. Rptr. 131) (expert testimony not required in corporate negligence case on claim of defective hospital bed.)

In the present case, the plaintiff did not disclose an expert witness to establish the applicable standard of care of the hospital in credentialing Hanny. Instead, the plaintiff contends that he did not need an expert witness because the issue of whether the hospital was negligent in its credentialing of Hanny is one issue within the ken of the average member of the jury. The plaintiff alleges that no special knowledge or expertise was needed to determine whether the hospital breached the applicable standard of care in failing to investigate the three medical malpractice cases lodged against Hanny because the inquiry requires only that the jury use its "common sense." We disagree.

Our Supreme Court has stated that expert testimony is necessary to establish the standard of care in circumstances in which such knowledge is not within the ken of an ordinary jury to understand. See *LePage* v. *Horne*, supra, 262 Conn. 125; accord *Santopietro* v. *New Haven*, supra, 239 Conn. 226. In *LePage*, our Supreme Court determined that expert testimony was required to establish the standard of care for a sleeping infant to prevent the infant from falling victim to sudden infant death syndrome. *LePage* v. *Horne*, supra, 126. The court held that even though tending to a sleeping infant is a common activity; id., 125; an ordinary juror would not have sufficient knowledge "to determine the required stan-

dard of care—in this case, knowledge that the risk of [sudden infant death syndrome] associated with leaving an infant sleeping in the prone position is sufficiently great so as to make it reasonably foreseeable that [sudden infant death syndrome] may occur, thereby requiring the caretaker to take appropriate preventative measures." Id., 126.

Similarly, in *Santopietro*, our Supreme Court held that the plaintiffs' claim of negligence against two baseball umpires required expert testimony because "[a]n umpire obtains, through formal training and experience, a familiarity with the rules of the sport, a technical expertise in their application, and an understanding of the likely consequences of officiating decisions." *Santopietro* v. *New Haven*, supra, 239 Conn. 227. Additionally, the court noted that "the fact finder's lack of expertise is exacerbated by the highly discretionary nature of the umpire's task. Thus, the fact finder must determine not just whether in hindsight the umpire erred, but also whether the umpire's error constituted an abuse of his broad discretion. In such cases in which the fact finder's decision requires specialized knowledge, expert testimony is necessary to assist lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard." Id.

The Supreme Court's discussions in *Santopietro* and *LePage* are instructive to the issue at hand. As the court in those cases found that proof of the standard of care required expert testimony because the underlying facts and judgments would not be within the ken of ordinary jurors, so, too, do we hold that the parameters of a hospital's judgment in credentialing its medical staff is not within the grasp of ordinary jurors. To the contrary, a hospital's decision whether to grant staff privileges to a physician is a specialized activity, executed by senior members of the hospital's staff, such as the chief

executive officer and the department chair. Pursuant to article three, paragraphs one through six of the hospital's bylaws, the reappointment process for physicians is multistaged. First, physicians must supply the chief executive officer of the hospital with completed reappointment forms. Then, according to the bylaws, "[e]ach practitioner [is] required to recheck [his or her] delineation of privileges and report to the Chief Executive Officer. . . . [T]he Department Chairman . . . review[s] the adequacy [of the physician's] training. Upon completion of review, the Chairman of the Department . . . return[s] the reappointment forms with his recommendation to the Medical Staff Office. The Medical Staff Office . . . then forward[s] copies of the reviewed material to the Credentials Committee for [its] review. . . . At least one month prior to the Annual Meeting of the Staff, the Credentials Committee, after due consideration of the Department recommendations . . . present[s] to the Medical Executive Committee a list of Staff members who are being recommended for reappointment. The Medical Executive Committee . . . review[s] all practitioners applying for reappointment and . . . make[s] its recommendations to the Board." Due to the complex nature of the hospital's credentialing process, only those knowledgeable about this activity could be said to possess knowledge of the standard of care to which a hospital reasonably may be held. See *Santopietro* v. *New Haven,* supra, 239 Conn. 227. Thus, we agree with the trial court that an understanding of the applicable standard of care and the behaviors that may constitute a violation of that standard are beyond the experience and ken of the ordinary fact finder.

The plaintiff nevertheless contends that the hospital's bylaws furnish sufficient evidence of the applicable standard of care owed to the plaintiff. We disagree. Our Supreme Court, in *Petriello* v. *Kalman,* 215 Conn. 377,

576 A.2d 474 (1990), held that "[a]lthough a violation of an employer's work rules can be viewed as evidence of negligence, such a violation does not establish the applicable duty of the hospital to its patients, since hospital rules, regulations and policies do not themselves establish the standard of care." (Internal quotation marks omitted.) Id., 386; see also *Van Steensburg* v. *Lawrence & Memorial Hospitals*, 194 Conn. 500, 506, 481 A.2d 750 (1984). In *Petriello*, a plaintiff sued a hospital for corporate negligence, alleging that the hospital's failure to ensure that its attending physician and nurses obtained the plaintiff's informed consent constituted a violation of the hospital's bylaws and, thus, the applicable duty of the hospital to its patients. Our Supreme Court disagreed, noting that the "[h]ospital's bylaw—which allows surgery only with a patient's informed consent—does not obligate the [h]ospital to guarantee that a patient has tendered informed consent. . . . By enacting its bylaw and drafting a consent form, the [h]ospital sought to increase the likelihood that doctors would warn patients. . . . It is quite unlikely that the defendant hospital, in adopting its rule requiring a written consent form to be signed, intended to assume a responsibility greater than the law imposed upon it already." (Citations omitted; internal quotation marks omitted.) *Petriello* v. *Kalman*, 386.

Similarly, we held in *Buckley* v. *Lovallo*, supra, 2 Conn. App. 582–83, that the failure of a hospital to have written rules for its conduct was insufficient to establish a violation of the standard of care in the absence of expert testimony showing that the existence of such rules is the standard practice. We rejected the plaintiff's contention that we follow the rule of another jurisdiction, which would have allowed the plaintiff to admit a hospital's own regulations and the standard of accrediting agencies on the question of the applicable standard of care, in lieu of expert testimony. Id., 583 n.2. We

noted that among other things, "[t]his rule was . . . contrary to the prevailing rule in Connecticut." (Citation omitted.) Id.

Accordingly, we hold that no genuine issue of material fact existed on the issue of whether the hospital negligently credentialed Hanny and that the hospital was entitled to judgment as a matter of law.

The judgment is affirmed.

In this opinion the other judges concurred.