## WALTER E. JOHNSON *v.* CONSOLIDATED INDUSTRIES, INC., ET AL.

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued March 2—decided March 16, 1966

*Sebastian J. Russo,* for the appellant (plaintiff).

*John D. Fassett,* for the appellee (named defendant).

ALCORN, J.   This case began by a complaint stating several causes of action in four counts against three defendants.  A fifth count was later added by amendment.  In the course of its progress to the present, all but the first count, asserting a breach of contract by the named defendant, have, with the plaintiff's acquiescence, fallen by the wayside.  The subject matter of the contract is the drop forging of aluminum shoes for racehorses which the plaintiff calls aluminum racing plates.

The material allegations of the first count of the complaint are, in substance, that on June 4, 1958, and for some time before that, the plaintiff manufactured racing plates.  The named defendant, henceforth called Consolidated, is in the drop-forging business.  The plaintiff had done business with Consolidated for eleven years.  He furnished aluminum stock to Consolidated which it stored and used to fill the plaintiff's orders for drop forgings.  There was an agreement and understanding that the plaintiff would order and pay Consolidated for drop-forging the material supplied by the plaintiff, and Consolidated agreed that the resulting aluminum racing plates "would be in a usable condition fit for use by racing horses."  From September through October, 1957, the plaintiff submitted orders to Consolidated, but, in doing the drop forging, Consolidated overheated the stock so that about 17,000 racing plates were defective, brittle, and unfit for use by racehorses.  As a result of Consolidated's failure to perform its agreement, the plaintiff claimed $50,000 damages.

Consolidated admitted only that it is in the drop-

forging business and had dealt with the plaintiff for eleven years. On the other disputed allegations of the first count the parties went to trial before a jury. At the conclusion of the trial, the court directed a verdict for Consolidated and, thereafter, denied the plaintiff's motion to set aside the verdict. The plaintiff has appealed from the judgment rendered on the verdict, assigning as error the court's action in directing the verdict and in denying the motion to set it aside.

"Although a directed verdict is not favored, it is justified if on the evidence the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as directed." *McDonald* v. *Connecticut Co.,* 151 Conn. 14, 17, 193 A.2d 490; *White* v. *E. & F. Construction Co.,* 151 Conn. 110, 112, 193 A.2d 716. In reviewing the action of the trial court, in first directing and thereafter refusing to set aside the verdict, we consider the evidence in the light most favorable to the plaintiff. *Santos* v. *Balnis,* 151 Conn. 434, 435, 199 A.2d 2; *Blados* v. *Blados,* 151 Conn. 391, 393, 198 A.2d 213. Since the plaintiff seeks to recover solely on the ground that Consolidated violated the terms of an express contract, the evidence offered in proof of the contract relied upon assumes primary importance. Unless that evidence would permit the jury to conclude that the contract was proved, the ensuing questions of a breach and, finally, of resulting damage do not arise.

The jury could have found that the transaction between the parties took the following form: There was no formal written contract setting forth any terms and conditions. All dealings throughout the years were oral. The plaintiff submitted orders to Consolidated by telephone or by a personal visit

to Consolidated's office. When the plaintiff placed an order, he received a typewritten quotation from Consolidated describing the quantity and kind of forgings ordered, the set up charges and the price per forging. The printed form on which the quotation was typed stated that it constituted the entire contract between the parties. Nothing in the document contained any agreement by Consolidated that the forgings "would be in a usable condition fit for use by racing horses". Delivery of the completed forgings was made within one to four weeks after receipt of the order. The work which Consolidated did consisted of drop-forging the raw material by using a die which produced the form of a horseshoe. The plaintiff ordered the raw material by telephone from the Aluminum Company of America and had it delivered to Consolidated. The raw material consisted of twelve-foot lengths of approximately one-half-inch aluminum bar stock. Each shipment was tagged with an identifying number, which varied with each shipment. The plaintiff owned the die and furnished it to Consolidated to use in the drop-forging operation. Consolidated cut the bar stock into twelve-inch lengths, heated them in an oven to make them malleable and then forged the shape of the racing plate with the die and a drop hammer. The plaintiff learned from the Aluminum Company of America that the raw material should be heated to a temperature of 825 to 835 degrees Fahrenheit for forging, and he instructed Consolidated to follow this heating requirement. The plaintiff also supplied Consolidated with dies to use in trimming away the excess metal after the bar stock had been shaped under the drop hammer. After the forgings were delivered to the plaintiff, they required further machine operations by him before

they were ready to be sold for use by racehorses. These operations consisted of milling and of punching, drilling and inserting "corks" or "stickers".

The evidence printed in the appendices to the briefs discloses nothing other than the facts stated above as tending to prove the contract alleged in the complaint. The evidence offered, therefore, not only fails to establish the contract relied on but, on the contrary, indicates a set of circumstances which, to any reasonable mind, would negate any basis for an agreement by Consolidated of the nature alleged. The crucial part of the claimed contract is that Consolidated agreed that the product of the drop forging "would be in a usable condition fit for use by racing horses". Quite obviously, the product could not possibly be in such a condition owing to the further operations which the plaintiff himself intended to and did perform in order to complete a usable racing plate. In view of those operations known to be necessary, it is unreasonable to suppose that the plaintiff could either seek or obtain an agreement of the nature claimed. This is quite aside from the remote likelihood that Consolidated would be inclined to make such an agreement concerning an operation which it performed on stock supplied by the plaintiff, by the use of a die furnished by the plaintiff and under instructions as to the degree of heat to be used dictated by the plaintiff.

The court was fully warranted in concluding that the jury could not, on the evidence, find the contract alleged by the plaintiff to have been proved.

There is no error.

In this opinion the other judges concurred.