AXEL CAMPBELL *v.* CHARLES POMMIER ET AL. (2774)

HULL, SPALLONE and DALY, Js.

Argued May 14—decision released August 20, 1985

*Richard H. Cunningham,* for the appellant (plaintiff).

*Arnold J. Bai,* with whom was *Garie J. Mulcahy,* for the appellees (defendants).

HULL, J. This appeal[1] arises out of the trial court's judgment rendered upon a jury verdict for the defendants, directed by the court. In addition, the plaintiff appeals several of the trial court's evidentiary rulings. We find error in part.

On September 5, 1974, the plaintiff, Axel Campbell, visited the office of the defendant Charles Pommier[2] for a dental checkup. During the course of his visit, Campbell underwent four bite wing x-rays administered

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. General Statutes § 51-199 (c).

[2] On January 14, 1980, Pommier died and the co-executors of his estate were thereafter substituted herein as parties.

by the defendant Elaine Byron, Pommier's dental hygienist. There is a dispute over precisely what thereafter occurred. Campbell's complaint alleges, in three counts, that due to either (1) the negligence of Byron and Pommier, (2) negligence in maintaining the x-ray machine, or (3) the wilful acts of Byron, he suffered excessive doses of x-ray radiation which caused him injuries including tissue damage, eye pain, photophobia, headaches and accompanying emotional distress and inability to work.

After a trial during which a great deal of the plaintiff's evidence was successfully objected to by the defendants, the defendants moved for a directed verdict. The motion was granted by the court which concluded (1) that there was no evidence of intent on the part of Byron, (2) that there was no evidence of any defect in the x-ray machine caused by insufficient maintenance, and (3) that, with respect to the negligence claims, there was no evidence of either a violation of the requisite standard of care or a causal relationship between such a violation and the plaintiff's injuries. From the judgment rendered after the denial of his motion to set aside the directed verdict, the plaintiff filed the present appeal. We conclude that the court erred in directing a verdict for the defendants on the first count.

I

"A directed verdict is not favored but is justified if, on the evidence, the jury could not reasonably and legally reach any other conclusion than that embodied in the verdict as directed." *Kegel* v. *McNeely,* 2 Conn. App. 174, 177, 476 A.2d 641 (1984); *Buckley* v. *Lovallo,* 2 Conn. App. 579, 583, 481 A.2d 1286 (1984). "On reviewing the action of the trial court in first directing and thereafter refusing to set the verdict aside, the evidence must be considered in the light most favorable to the plaintiff. *Johnson* v. *Consolidated Industries,*

*Inc.*, 153 Conn. 522, 524, 218 A.2d 380 (1966); *Yeske* v. *Avon Old Farms School, Inc.*, 1 Conn. App. 195, 201, 470 A.2d 705 (1984)." *Kegel* v. *McNeely,* supra.

In the present case, although the briefs and oral argument focused primarily on the negligence claims, the directed verdict encompassed all three counts of the complaint and we must review each of them separately.

## A

### The Plaintiff's Allegations of Negligence on the Part of Byron and Pommier

The defendants conceded at oral argument that there was "a lot of testimony" on the issue of what the appropriate standard of care was with respect to the taking of bite wing x-rays. It is only with respect to proof of breach of that standard and proximate cause that the parties disagree.

In Connecticut, both breach of the standard of care and proximate cause must be proved by expert testimony. *Grody* v. *Tulin,* 170 Conn. 443, 449, 365 A.2d 1076 (1976); *Fitzmaurice* v. *Flynn,* 167 Conn. 609, 616, 356 A.2d 887 (1975); *Ardoline* v. *Keegan,* 140 Conn. 552, 558, 102 A.2d 352 (1954). We conclude that expert testimony was presented on both of these issues.

Allan Reiskin, a professor of radiology of the school of dental medicine at the University of Connecticut, testified that the standard of care with regard to the taking of x-rays, as advocated by the American Dental Association, "would be to keep the exposure as low as possible, which would include factors, such as keeping the x-ray field as small as possible, which is usually done by having . . . the source as close to the object as possible." Reiskin then went on to testify, on the basis of an arc of unexposed film on one of the x-rays caused by a "cone cut," that the machine used in this case was "approximately fourteen inches" from

Campbell's cheek,[3] and he testified that taking the x-ray at a distance away from the cheek would violate the standard of care.

Related to that testimony was the testimony of Arthur Heubner, director of radiation control for the state department of environmental protection, that, if placed at the cheek, the machine would irradiate an area of 5.5 inches in diameter while at fourteen inches from the cheek, the machine would irradiate an area of 8.25 inches in diameter. This evidence clearly was sufficient to enable the jury to conclude that the x-ray machine was, in fact, farther from Campbell than was proper, and that, if the machine was, in fact, fourteen inches from Campbell's face, his eyes could have been within its field and hence his injuries could have been caused by it.

Further, the testimony was clearly sufficient to enable the jury to infer that the x-ray exposure lasted longer than the standard allowed. Reiskin testified that the exposure should be "as low as possible." Byron testified that from three-quarters of a second to one second was the usual exposure and Campbell testified that he heard buzzing sounds ranging between four and fifteen seconds. This, coupled with Byron's testimony and that of Heubner regarding the noise made by the machine while it was activated, brought the issue within the jury's power to decide.

With regard to the issue of proximate cause, David H. Fogel, a privately practicing physician, testified that he treated Campbell on several occasions after his visit to Pommier. He further testified that his conclusion after treating Campbell was that Campbell's injuries were caused by x-ray radiation. From this, he concluded

---

[3] In substance, this calculation was made by computing the diameter of the exposure area from the arc on the film. From that diameter it is then possible to compute the distance between the machine and the subject.

that the x-rays at issue in this case caused the injuries because "[t]he only history that I obtained from the patient was the sole x-ray exposure that he had from the dental x-ray machine." Thus, not only was there expert testimony regarding whether x-rays caused Campbell's injuries, but that, as far as Fogel could tell, the x-rays in question caused those injuries.

We note, with regard to all of the evidence referred to above, that it was far from compelling. Nor was it uncontroverted. That does not, however, nullify the fact that it could have been believed and that, if believed, it would have supported a jury verdict in favor of the plaintiff on the first count. "A party has the same right to submit a weak case as he has to submit a strong one." *Strickland* v. *Vescovi,* 3 Conn. App. 10, 16, 484 A.2d 460 (1984). We, therefore, conclude that the court erred in directing a verdict for the defendants with respect to the first count of the complaint.

### B

### The Plaintiff's Allegations of Negligent Failure to Maintain the Machine

The plaintiff testified that he heard buzzing or humming sounds coming from the x-ray machine for periods of four to eight seconds and twelve to fifteen seconds. In one case, the sound was interrupted a number of times. While he was not allowed to testify that these sounds were actually caused by operation of the machine, both Byron and Heubner did testify that operation of the machine caused such sounds to emanate from its head. This evidence, coupled with Byron's testimony, referred to earlier, that she set the time on the machine for three-quarters of a second or one second, clearly presented enough evidence to the jury from which it could infer that the actual exposure time did not conform to the time which was set by Byron on the timer.

Nonetheless, the plaintiff must prove more than the mere existence of a malfunction. Since this claim sounds in negligence, duty of care, breach of duty, injury and proximate cause all must be proven by the plaintiff. *Coburn* v. *Lenox Homes, Inc.,* 186 Conn. 370, 372, 441 A.2d 620 (1982). Here, the plaintiff does not point us to any testimony elicited at trial regarding the proper standard of care in maintaining x-ray machines, nor does he point us to any evidence that the defendants breached that standard other than the fact that an injury occurred. Hence, as to the second count of the complaint, the directed verdict was not in error.

C

The Plaintiff's Allegations that
Byron Acted Wilfully

Byron testified, at trial, to the effect that she usually placed the cone of the x-ray machine at or near the cheek of her patient and that, depending on the region of the mouth to be x-rayed, the proper exposure time was from three-quarters of a second to one second. Byron also testified that, as to the plaintiff, she did not remember any deviation from her usual procedure. The plaintiff asserts that sufficient proof of wilfulness to submit the question to the jury is found in the following inconsistencies in the evidence: (1) Byron's testimony regarding her usual procedures and her testimony that she did not remember any deviation therefrom in this case; (2) her conflicting deposition testimony regarding the distance between the x-ray machine and Campbell's face; (3) her further conflicting answers on this issue in her responses to the plaintiff's interrogatories; and (4) Reiskin's conflicting trial testimony regarding his estimation of the distance between the x-ray machine and the plaintiff. We disagree.

Even if all of the conflicting evidence is taken in the light most favorable to the plaintiff, it contains no infer-

ence of wilfulness on Byron's part. At the very best, it suggests that she placed the x-ray machine farther from the plaintiff than was proper and that, consequently, he was exposed to radiation over a larger portion of his face than was proper. No evidence regarding wilfulness was presented. The jury could not reasonably and legally have reached any other conclusion and, thus, as to the third count of the complaint, the directed verdict was proper.

## II

The plaintiff also raises eight claims of error with regard to evidentiary rulings made by the trial court. We conclude that, with the exception of three of these claims, they are without merit as the court's rulings were within the bounds of its discretion in such matters. *Hardisty* v. *Hardisty,* 183 Conn. 253, 257, 439 A.2d 307 (1980); *New York Annual Conference* v. *Fisher,* 182 Conn. 272, 302, 438 A.2d 62 (1980). We consider the following claims since they are apt to recur upon a new trial.

## A

### The Court's Refusal to Allow Diagnosis Testimony Regarding a Mental Condition From Other Than a Board-Certified Psychiatrist

The plaintiff presented two witnesses to testify regarding his mental condition. The first of these was Kermit Shulman, a licensed clinical psychologist who tested and treated the plaintiff from April, 1977, to trial. Shulman has a masters degree in psychology from Columbia University and has done advanced studies in clinical psychology at Washington School of Psychiatry and in psychoanalysis at the New York Psychiatrics Institute. He has further studied at both the Theodore Wright Clinic and Bellevue Hospital in New York.

Shulman has been in private practice since 1940 examining, diagnosing and treating patients with mental problems.

"The true test for the admissibility of expert testimony is 'whether the witnesses offered as experts have any peculiar knowledge or experience, not common to the world, which renders their opinions founded on such knowledge or experience any aid to the court or the jury in determining the questions at issue.' " *Schomer* v. *Shilepsky,* 169 Conn. 186, 191, 363 A.2d 128 (1975), quoting *Taylor* v. *Monroe,* 43 Conn. 36, 44 (1875); *Puro* v. *Henry,* 188 Conn. 301, 309, 449 A.2d 176 (1982); see also McCormick, Evidence (3d Ed. 1984) § 13. Clearly, Shulman satisfied this requirement and should have been qualified as an expert. The court concluded, however, that "[a] psychologist is not a psychiatrist . . . . Therefore, he may not testify as to diagnosing anybody with a mental illness, acute mental illness."

Clearly there is a distinction between psychologists and psychiatrists, and that distinction should be made clear to a jury. The distinction, however, does not make one an expert and the other not an expert. In fact, psychologists have in the past been recognized as expert witnesses. See *State* v. *Toste,* 178 Conn. 626, 628, 424 A.2d 293 (1979). " '[I]f any reasonable qualifications can be established, the objection goes to the weight rather than to the admissibility of the evidence.' " *Waldron* v. *Raccio,* 166 Conn. 608, 614, 353 A.2d 770 (1974), quoting *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 224, 10 A.2d 600 (1940); *Going* v. *Pagani,* 172 Conn. 29, 32, 372 A.2d 516 (1976); see also *Buckley* v. *Lovallo,* 2 Conn. App. 579, 584, 481 A.2d 1286 (1984). Consequently, the court erred in refusing to allow Shulman to testify as to his diagnosis of the plaintiff.

The second expert presented by the plaintiff was David Danzer. Danzer is a graduate of the medical

school of the University of Miami who did additional work in psychiatry for two months at Los Angeles County General Hospital and at the naval hospital in Pensacola, Florida, where he dealt with aviators' psychiatric problems. He was also qualified in psychiatry by the navy and was acting chief of neuropsychiatry for Quonset Naval Hospital for six months in 1971.

Danzer testified that he saw the plaintiff in what was essentially a social setting during the period just after the plaintiff's visit to the defendants. He, on one occasion, inspected the injuries to the plaintiff's tongue and testified as to what he saw although that was not a formal inspection for diagnostic purposes. The court refused to allow Danzer to testify as to the plaintiff's psychiatric condition, concluding that "[h]e can tell about the personality he took, and the tests that he took, and what he found as a result of the test and he did, but we refuse to allow him to give a psychiatric opinion."

As with Shulman's testimony, we conclude that the court erred in failing to qualify Danzer as an expert. Although the transcript of his testimony reveals that he had very little substantive evidence to provide to the court and that his credentials were skimpy in the psychiatric field, such matters affect the weight of his testimony, not his expertise in and of itself. Thus, the court erred in failing to allow Danzer to testify as to his diagnosis, from his meetings with the plaintiff, of the plaintiff's psychiatric state at that time.

## B

The Court's Refusal to Allow Testimony With Regard to Machine Malfunction Prior to Testimony as to the Cause of the Plaintiff's Injuries[4]

---

[4] Although the plaintiff's preliminary statement of issues refers to two separate claims of error at this point, his argument consolidates them. Hence, the two remaining claims of error in the court's evidentiary rulings are consolidated here.

The plaintiff presented two witnesses, Louis Makrinos, an x-ray service engineer, and Edward Kennelly, a radiological physicist, to the court to testify regarding the cause of a hum heard by the plaintiff and regarding the area of the plaintiff's face exposed to the x-ray beam. These witnesses, however, were presented prior to any testimony, other than that of the plaintiff himself, regarding the injuries suffered or their medical causation. On this basis, the court sustained the defendant's objections to the testimony of the two witnesses as being premature.

It is within the discretion of the trial court to control the order of the testimony. *State* v. *McCall,* 187 Conn. 73, 84, 444 A.2d 896 (1982); McCormick, Evidence, supra, § 58. However, it is often necessary to allow evidence to be admitted conditionally on the promise of counsel to provide support for that evidence at a later time. This is "the everyday method of handling the situation." McCormick, Evidence, supra. In the present case, it was necessary for the plaintiff to provide evidence regarding the nature of the claimed defect in the machine so that he could later obtain testimony from his medical experts regarding whether the claimed defect could have caused his injuries. On the other hand, without testimony regarding the nature and extent of the plaintiff's injuries, testimony regarding the claimed defect made little sense. Nonetheless, "only one fact can be proven at a time or by a given witness, and the order of convenience in calling witnesses or of clear presentation may not in a particular case be the order of logical statement." McCormick, Evidence, supra. Thus, we conclude that the trial court erred in refusing to allow the plaintiff to elicit the testimony of Makrinos and Kennelly when they were presented.

## III

Finally, the plaintiff claims that the court erred in denying his motion for mistrial on the ground of the court's expressions "including facial and physical actions," and in denying his motion to set aside the directed verdict. Our conclusion in part I of this opinion renders further discussion of these claims unnecessary.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except that a new trial is ordered with respect to count one of the plaintiff's complaint.

In this opinion the other judges concurred.