JEANINE DIXON *v.* UNITED ILLUMINATING COMPANY
(AC 18360)

Spear, Mihalakos and Freedman, Js.

Argued December 6, 1999—officially released March 21, 2000

*George J. Markley*, with whom were *Donald C. Cousins* and, on the brief, *Mark A. Goldsmith*, for the appellant (plaintiff).

*Andrew A. Cohen*, for the appellee (defendant).

*Opinion*

FREEDMAN, J. The plaintiff, Jeanine Dixon, appeals from a decision of the compensation review board (board) affirming the decision of the commissioner to dismiss the plaintiff's claim for benefits as the widow of the decedent, Kenneth Dixon. We affirm the decision of the board.

The following facts are relevant to this appeal. The plaintiff was married to the decedent from 1962 until his death on September 28, 1993. The decedent was employed by the defendant, United Illuminating Company, from 1970 until the date of his death. On September 28, 1993, the decedent committed suicide by hanging himself in the hallway of his home. At the time of his death, the decedent had an open, compensable workers'

compensation claim for injuries to his neck and back that occurred on July 24, 1987.

The plaintiff argued before the commissioner that the decedent's 1987 injury, and the resulting surgeries, chronic pain and depression contributed substantially to the decedent's suicide. The commissioner, in a comprehensive decision, concluded that the plaintiff had failed to prove that the decedent's suicide was causally related to his 1987 compensable injury. The commissioner concluded, rather, that the "substantial, continued, lifelong alcohol abuse of [the decedent] was the significant contributing factor in his alleged depression and/or psychiatric condition, and ultimately resulted in his suicide . . . ." The commissioner therefore dismissed the claim. This decision was affirmed by the board, and the plaintiff appealed to this court.

The plaintiff argues on appeal that the commissioner improperly (1) allowed Georgann Witte, a clinical psychologist, to testify as an expert regarding whether the decedent's 1987 workplace injury was a substantial factor contributing to his suicide, (2) failed to apply the substantial contributing factor test and (3) failed to apply the preponderance of the evidence standard. The plaintiff additionally raises several issues related to the commissioner's findings of fact.[1] The plaintiff contends that the board improperly upheld the decision of the commissioner with regard to each of these issues.

I

The plaintiff first argues that the board improperly held that the commissioner was entitled to rely on Wit-

[1] The plaintiff raises three arguments related to the commissioner's findings of fact. Specifically, she argues that the decision of the commissioner should be reversed because (1) it includes findings unsupported by the facts, (2) the commissioner failed to include uncontroverted material facts in the finding and (3) the commissioner made inferences inconsistent with subordinate facts, and, therefore, the conclusions of the commissioner cannot stand. These issues will be considered together in part IV of the opinion.

te's testimony in determining whether chronic pain was a substantial contributing factor in the suicide of the decedent. We disagree with the plaintiff.

We initially note the standards that govern our review of this claim. "The determination of whether an injury arose out of and in the course of employment is a question of fact for the commissioner." *Spatafore* v. *Yale University*, 239 Conn. 408, 418, 684 A.2d 1155 (1996). "The appropriate standard applicable to the board when reviewing a decision of a commissioner is well established. [T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is obligated to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts." (Internal quotation marks omitted.) *O'Reilly* v. *General Dynamics Corp.*, 52 Conn. App. 813, 815–16, 728 A.2d 527 (1999).

"Our role is to determine whether the review [board's] decision results from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . This standard clearly applies to conflicting expert medical testimony. It [is] the province of the commissioner to accept the evidence which impress[es] him as being most credible and more weighty." (Citation omitted; internal quotation marks omitted.) Id., 816.

"Expert testimony should be admitted when: (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *Freeney*, 228 Conn. 582, 591, 637 A.2d 1088 (1994). "Once the threshold question of usefulness . . . has been satisfied, any other questions regarding the

expert's qualifications properly go to the weight, and not to the admissibility, of his testimony." *Davis* v. *Margolis*, 215 Conn. 408, 417, 576 A.2d 489 (1990).

Several witnesses testified at the hearing before the commissioner. The plaintiff presented two medical expert witnesses, James Alexander and Thomas R. Kosten, in support of her claim that the decedent's suicide was causally related to his 1987 work-related injury.[2] Alexander, a board certified physician in pain management, saw the decedent on August 17, 1993. Alexander opined that it was reasonably medically probable that the decedent's suicide was related to and motivated by feelings of helplessness or hopelessness due to chronic pain and major depression. The commissioner, however, did not credit Alexander's testimony for the reason that it was based on an incomplete and inaccurate medical history. In this regard, the commissioner noted that Alexander was not advised of the decedent's extensive prior psychiatric history and treatment, nor did he review the decedent's work records or personal journal.

Kosten, a physician board certified in neurology and psychiatry,[3] testified that he believed that the decedent's depressive disorder was related to the original injury and the sequelae of that injury. He based his opinion on reasonable medical probability that depressive disorder, in addition to the chronic pain syndrome, was a substantial contributing factor in the etiology of the decedent's suicide. The commissioner, however, credited only part of Kosten's testimony. The commissioner reasoned that Kosten testified without ever treating the decedent, did not review the decedent's journal and did not understand or know that the

---

[2] The plaintiff also produced documentary evidence, including medical records of the decedent and testimony from several other nonexpert witnesses.

[3] Kosten is a professor of psychiatry and the director of the division of substance abuse at Yale University.

decedent's job in 1993 did not require physical strength. The commissioner further stated that Kosten based many of his conclusions on a history that began with a work accident and not on a history of approximately twenty years of alcohol abuse and depression prior to the work accident.

The defendant presented evidence at the hearing that the decedent's suicide was not related to his compensable injury, arguing, rather, that the decedent's lifelong battle with alcoholism and depression resulted in his suicide. In support of this theory, the defendant presented Witte. The commissioner accepted Witte as an expert in the area of clinical psychology and substance abuse.

The plaintiff argues that the commissioner improperly accepted Witte as an expert. According to the plaintiff, Witte does not qualify as an expert regarding the specific issue in this case, namely, whether chronic pain was a substantial contributing factor in the decedent's death. The plaintiff contends that to qualify as an expert in this regard, Witte was required to have expertise in chronic pain and the etiology of suicide, which she did not have. In support of this argument, the plaintiff notes that the commissioner accepted Witte as an expert in the areas of clinical psychology and substance abuse, not in the areas of chronic pain and suicide.

We conclude that the commissioner properly permitted Witte to testify as an expert, and that this decision was properly upheld by the board. The issue, as framed by the commissioner, was "whether [the decedent's] compensable injury to his back and neck of July 24, 1987 and the alleged sequelae of that accident, including cervical and lumbar spine fusions, alleged chronic pain and depression were substantial contributing factors in [the decedent's] death by suicide . . . ." The record reflects that Witte was qualified to testify regarding this

issue. Specifically, Witte was qualified to testify that the decedent's lifelong battle with alcoholism and depression, rather than chronic pain resulting from his 1987 injury, contributed substantially to the decedent's death. See *Campbell* v. *Pommier*, 5 Conn. App. 29, 37, 496 A.2d 975 (1985) (distinction between psychiatrists and psychologists "does not make one an expert and the other not an expert"); *Buckley* v. *Lovallo*, 2 Conn. App. 579, 586–87, 481 A.2d 1286 (1984) (psychiatrist should have been permitted to testify regarding causal relationship between suicide attempt and prior surgery).

With regard to her qualifications, Witte testified that she had received a doctorate in clinical psychology from Rutgers University, where her major training focus was substance abuse, primarily alcoholism. Her postgraduate clinical internship focused on depression, and she worked at the substance abuse treatment unit of the Yale Medical School department of psychology. Witte testified that since 1989, her private practice has specialized in "dual diagnosis" patients, alcoholism and chronic pain, along with depression. She indicated that because her practice is well known for chronic pain work, she has had considerable experience with chronic pain patients. She further indicated that she has extensive clinical experience with suicides.[4]

The commissioner found that Witte did the most thorough review of the entire body of evidence concerning the life of the decedent. Witte opined, on the basis of her review of all of the records, testimony at earlier hearings, the histories provided to each of the dece-

---

[4] Witte testified as follows during her voir dire examination: "Clinically, [suicide is] something that I have to deal with all the time. I see depressed patients. I see substance abusing patients. I see chronic pain patients. It's something that—I deal with suicide crises on a weekly basis. It's something I have extensive clinical experience with as a result of the patient populations I see."

dent's medical providers, and the decedent's personal journal, that the decedent's 1987 injury was not a substantial factor in causing his suicide. She concluded that alcohol abuse was a life threatening problem for the decedent long before his employment with the defendant.

Regarding the decedent's drinking problem, Witte noted that the decedent had a twenty-eight year history of alcohol abuse. Witte found from the records that the decedent reported his father to be an alcoholic and that his mother had a drinking problem. Witte concluded that a family history of alcohol abuse is a very clear predisposing factor for later alcoholism, either because of genetics, learned behaviors or both. She further testified that alcoholism is a significant risk factor for suicide and that middle-aged alcoholic males are particularly prone to suicide. According to Witte, a review of the decedent's various medical records[5] indicated stress from his son's illness,[6] tremendous work responsibilities and a stressful home life as the reasons for the decedent's increased drinking.

The commissioner found that in October, 1989, the plaintiff and her son arranged a meeting with the decedent's supervisor, John Buffa, to discuss the decedent's alcohol problem. After meeting with the plaintiff, Buffa learned of the decedent's absences and operating errors. Buffa suspended the decedent on October 24, 1989, and requested that the decedent seek substance abuse counseling. The defendant thereafter placed the decedent on a continuing drug and alcohol screening program. The commissioner accepted Witte's testimony that the plaintiff's meeting with Buffa created a crisis for the decedent.

---

[5] The decedent was admitted at different times in his life to the Stonehaven detoxification facility, Park City Hospital and the Elmcrest Psychiatric Institute.

[6] In 1987, the decedent learned that his son had cancer.

On March 9, 1990, the decedent met with a counselor at the Southern Connecticut Substance Abuse Center. According to Witte, the records from the March 9, 1990 visit revealed the decedent's panic, and the fact that he threatened suicide and harm to others that day. Two days later, on March 11, 1990, the decedent threatened the plaintiff with a kitchen knife and the police were called to the home.

Witte defined chronic pain as "pain which is experienced daily on a continuing basis for a period of time (for many months or years) where there is an underlying medical condition." She indicated that a chronic pain patient generally cannot work full-time on a regular basis because the pain is disabling by definition. Witte reviewed the decedent's journal and indicated that it did not focus on physical pain or possible surgery. The decedent's journal revealed, rather, that for the last six months of his life, the decedent was frustrated, angry and preoccupied with perceived conflicts with supervisors, equipment malfunctions and other work problems. The commissioner accepted Witte's testimony that the decedent's performance problems during 1993 were very threatening to the decedent and made him feel vulnerable. Witte concluded that the decedent did not have continuous pain from the time of his work accident in 1987 to the end of his life. She further indicated that there was no evidence that the decedent was psychotic when he committed suicide.

It was within the commissioner's discretion to credit all, part or none of the expert testimony presented at the hearing. *O'Reilly* v. *General Dynamics Corp.*, supra, 52 Conn. App. 819. The board did not abuse its discretion in affirming the commissioner's decision to allow Witte to testify regarding the claimed causal relationship between the decedent's 1987 injury and his suicide, and to rely on that testimony.

## II

The plaintiff next argues that the commissioner's decision should be reversed because she failed to apply the substantial contributing factor test. We disagree with the plaintiff's characterization of the commissioner's decision, and conclude that the commissioner applied the proper standard.

We begin by noting that traditional concepts of proximate cause furnish the appropriate analysis for determining causation in workers' compensation cases. See *McDonough* v. *Connecticut Bank & Trust Co.*, 204 Conn. 104, 118, 527 A.2d 664 (1987); see also *Besade* v. *Interstate Security Services*, 212 Conn. 441, 449, 562 A.2d 1086 (1989). "[T]he test for determining whether particular conduct is a proximate cause of an injury [is] whether it was a substantial factor in producing the result." (Internal quotation marks omitted.) *Paternostro* v. *Arborio Corp.*, 56 Conn. App. 215, 222, 742 A.2d 409 (1999), cert. denied, 252 Conn. 928, 746 A.2d 788 (2000).

The plaintiff refers to the commissioner's statement that "the medical evidence and treatment records submitted demonstrated that the substantial continued life-long alcohol abuse [by the decedent] was *the* significant contributing factor in his alleged depression and/or psychiatric condition, and ultimately resulted in his suicide . . . ." (Emphasis added.) According to the plaintiff, this conclusion implies that only one factor can be *the* significant factor. The plaintiff contends that she did not need to prove that chronic pain was the *sole* factor in the suicide, only that it was a substantial factor. In this regard, the plaintiff argues that a finding that alcoholism played a role in the decedent's suicide did not preclude a finding that his 1987 injury and resulting chronic pain were *also* substantial factors.

A review of the commissioner's decision reveals that she properly applied the substantial factor test in con-

cluding that the decedent's lifelong battle with alcohol-
ism and depression rather than his 1987 injury, caused
the decedent to commit suicide. Although the plaintiff
argues that the commissioner applied a standard requir-
ing her to prove that the employment was the sole
factor in the decedent's suicide, rather than a substan-
tial contributing factor in the suicide, the decision
clearly indicates that this is not the case. At the outset
of the decision, the commissioner phrased the issue
before her by referring to the substantial factor test.[7]
The commissioner later stated in the decision that "[t]he
work-related injuries and the sequelae of those injuries,
including the alleged chronic pain, *were not substantial
contributing factors* in [the decedent's] death . . . ."
(Emphasis added.) The commissioner further indicated
that "[the decedent's] 1987 compensable work injury,
subsequent surgeries, sequelae of the surgeries or the
alleged chronic pain *was not in any way a contributing
factor* in that suicide . . . ." (Emphasis added.) Con-
trary to the plaintiff's argument, she was not required
to prove that the 1987 injury and the resulting chronic
pain was the sole factor in the decedent's suicide.[8]

---

[7] Specifically, the decision states that "[t]he issues in this case are (a)
whether [the decedent's] compensable injury to his back and neck of July
24, 1987, and the alleged sequelae of that accident, including cervical and
lumbar spine fusions, alleged chronic pain and depression *were substantial
contributing factors* in [the decedent's] death by suicide on September
28, 1993; and (b) whether the [plaintiff], Jeanine Dixon, [the decedent's]
dependent widow, is entitled to death benefits that flow therefrom." (Empha-
sis added.)

[8] In reaching this conclusion, we are aware of the commissioner's further
statement that "the evidence presented also failed to establish by a prepon-
derance of evidence that but for his work-related injury [the decedent]
would not have committed suicide . . . ." This statement is consistent with
*Wilder* v. *Russell Library Co.*, 107 Conn. 56, 139 A. 644 (1927), in which
our Supreme Court considered the factors for the commissioner to consider
in determining whether a suicide is compensable.

The court in *Wilder* stated that "[w]here such a claim is made, a commis-
sioner must give careful consideration to all the circumstances in evidence
before him, not merely those surrounding the employment, but also those
which have to do with any hereditary predisposition to mental disorder on

## III

The plaintiff next argues that the commissioner failed to apply the preponderance of the evidence standard. The plaintiff again refers to the commissioner's statement that "the evidence presented also fail[s] to establish by a preponderance of evidence that but for his work-related injury [the decedent] would not have committed suicide . . . ." The plaintiff again argues that she was required to prove only that the decedent's injury was a substantial contributing factor in his suicide, and that she did not need to negate all other possibilities. We disagree with the plaintiff's characterization of the commissioner's decision.

As previously discussed, the commissioner properly applied the substantial contributing factor test. The commissioner also properly applied the preponderance of the evidence standard. The commissioner stated that the plaintiff "failed to prove by a preponderance of evidence that the decedent . . . suffered from a psychiatric condition and/or chronic pain syndrome which was causally related to the compensable July 24, 1987 work injury . . . ." The commissioner further found that "the evidence in this case failed to establish by a preponderance of evidence that the suicide of [the decedent] arose out of and in the course of his employment . . . ." Contrary to the plaintiff's argument, the commissioner did not require her to negate all other possibilities.

the part of the employee, with his personal characteristics, and with his conditions of life outside the employment. Compensation is not to be awarded unless it is properly found that the insanity is traceable to the employment or its conditions as the direct causal agency which produced it, and that, had it not been for that employment or those conditions, it would not have occurred." Id., 62.

We conclude that although the commissioner referred to the *Wilder* "but for" test, when the decision is read as a whole, the standard that the commissioner actually applied was the substantial contributing factor test.

IV

We consider the plaintiff's final three arguments together because they all involve challenges to the commissioner's findings of fact. Specifically, the plaintiff argues that the decision of the commissioner includes findings unsupported by the facts. She also contends that the commissioner failed to include uncontroverted material facts in the decision. Finally, the plaintiff argues that the commissioner's conclusions cannot stand because they are inconsistent with the subordinate findings and underlying facts. We disagree.

"[T]he power and duty of determining the facts rests on the commissioner, the trier of facts." (Internal quotation marks omitted.) *Fair* v. *People's Savings Bank,* 207 Conn. 535, 539, 542 A.2d 1118 (1988). "Where the subordinate facts allow for diverse inferences, the commissioner's selection of the inference to be drawn must stand unless it is based on an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." *Paternostro* v. *Arborio Corp.*, supra, 56 Conn. App. 219. "Once the commissioner makes a factual finding, [we are] bound by that finding if there is evidence in the record to support it." (Internal quotation marks omitted.) Id.

The plaintiff argues that the commissioner's findings of fact regarding the decedent's history of alcohol abuse, complaints of pain, the weight of the witnesses' testimony, the possible relationship of the decedent's drinking to his death and work performance, and the defendant's response to the decedent's 1987 injury claim are not supported by the evidence. She further argues that certain material, undisputed facts that were not included in the commissioner's decision establish that the decedent suffered from chronic pain resulting from the 1987 injury, which contributed to his depression and suicide. She additionally contends that the pain

was a substantial contributing factor in the decedent's suicide and that Witte did not qualify as an expert in the case.

The evidence presented to the commissioner, as previously indicated, supports the commissioner's finding that the decedent's suicide was the result of his alcoholism and depression, rather than his 1987 injury. This conclusion was properly based on inferences reasonably drawn from the subordinate facts and was a correct application of the law. See id., 222. The board, therefore, properly affirmed the commissioner's decision in this regard.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.