******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DOLORES WILSON *v.* MAEFAIR HEALTH CARE
CENTERS ET AL.
(AC 35976)

Alvord, Mullins and Bear, Js.

*Argued November 13, 2014—officially released February 10, 2015*

(Appeal from the Workers' Compensation Review
Board)

*Timothy D. Ward*, for the appellant (defendant Gallagher Bassett Services).

*Vincent Di Palma*, for the appellee (defendant Liberty Mutual Insurance Company).

*Opinion*

ALVORD, J. This workers' compensation appeal arises out of a dispute between two defendant insurers, Liberty Mutual Insurance Company (Liberty Mutual) and Gallagher Bassett Services (Gallagher Bassett), as to which of them is responsible for surgical expenses and disability benefits arising from an injury sustained by the plaintiff, Dolores Wilson, on March 22, 2011, while she was employed as a certified nursing assistant with the defendant Maefair Health Care Centers (Maefair).[1] Gallagher Bassett appeals from the decision of the Workers' Compensation Review Board (board) affirming the findings and award of the Workers' Compensation Commissioner for the Fourth District (commissioner), who determined that Gallagher Bassett was solely responsible for Wilson's expenses and benefits. On appeal, Gallagher Bassett claims that the board improperly affirmed the decision of the commissioner because the commissioner (1) made findings of fact that were not supported by the medical evidence, (2) erroneously determined that Wilson's March 22, 2011 injury "was causative of [Wilson's] need for surgery," and (3) made factual findings that were inconsistent with the evidence in the record.[2] We affirm the decision of the board.

The record reveals the following facts, either undisputed or as found by the commissioner, and procedural history. Wilson commenced employment with Maefair as a certified nursing assistant in October, 2000. In 2006, Wilson sustained a work related injury to her neck. After a brief period of medical treatment, she resumed her duties without any restrictions. On April 4, 2010, she sustained a second work related injury to her neck. Wilson sought medical treatment, and the doctor who treated her noted that her pain radiated into her left hand and finger. Wilson initially was unable to work after the April 4, 2010 incident, but subsequently returned to her position several days later without any restrictions. She continued to receive chiropractic treatment from April 9, 2010 through August 4, 2010, at which time she reported that her condition had significantly improved and that she no longer had pain in her neck or arm. She did note that she continued to experience numbness from her left elbow to her first three fingers, but she reported that she was not taking any medication.

Wilson, at her doctor's request, underwent an MRI on August 7, 2010, which revealed multiple levels of degenerative cervical disc disease. She was referred to Mark E. Wilchinsky, a board certified physician in orthopedic surgery. Dr. Wilchinsky noted that Wilson was experiencing pain that radiated from her neck down to the radial three digits of her left hand, and that Wilson reported that she was beginning to experience similar symptoms with respect to her right hand. Dr.

Wilchinsky noted that Wilson's reflexes were symmetrically decreased; he did not note hyperflexia[3] or clonus[4] at that time. He believed Wilson was a surgical candidate and referred her to Abraham Mintz, a neurosurgeon, for a second opinion, but he indicated that she could continue with her present job duties. Liberty Mutual, then Maefair's workers' compensation insurance carrier, did not authorize Wilson's appointment with Dr. Mintz, and, therefore, she did not meet with him in 2010.[5] After August, 2010, she received no further medical treatment for her neck injury until she reinjured her neck in March, 2011.

Despite ongoing symptoms that extended from her neck into her left arm and fingers, Wilson continued to perform her duties at Maefair, although with some difficulty, without work restrictions. On March 22, 2011, while assisting a patient, Wilson sustained another work related injury to her neck. At this point, Gallagher Bassett was Maefair's workers' compensation insurance carrier. Wilson immediately sought medical treatment, was diagnosed with a cervical sprain, and was restricted to light duty work. On April 5, 2011, Wilson returned to Dr. Wilchinsky, who found that her reflexes were symmetrically increased. He stated that she needed cervical disc surgery[6] and again referred her to Dr. Mintz for a neurological evaluation. Although Dr. Wilchinsky continued Wilson's light duty work restrictions, Maefair was unable to accommodate Wilson's needs after a short period of time, and, thus, she ceased employment with it. She has made diligent efforts to secure employment elsewhere, but has been unsuccessful in finding work within her physical limitations.

Dr. Mintz met with Wilson on August 12, 2011. At that time, he recommended a multilevel anterior cervical disc excision and fusion. Dr. Mintz opined that Wilson had "additional findings" that were not noted to have existed in 2010. He specifically found that she had weakness in her left upper extremity, that her reflexes were diffusely hyperactive, and that she had Hoffman signs[7] bilaterally. He additionally opined that, based on the MRI scan of August, 2010, Wilson had been a surgical candidate prior to the March 22, 2011 incident.

At the request of Liberty Mutual, Wilson underwent an examination with John G. Strugar, a board certified neurosurgeon, on January 11, 2012. Dr. Strugar opined, as did Dr. Wilchinsky and Dr. Mintz, that Wilson had been a surgical candidate prior to the March 22, 2011 incident. Although Wilson had underlying cervical disc disease, Dr. Strugar believed that the injuries she sustained in the April 4, 2010 and March 22, 2011 incidents both were substantial factors in causing her need for surgery much sooner than would otherwise have been necessary. Dr. Strugar opined that the April 4, 2010 incident was 30 percent responsible for Wilson's need for surgery, the March 22, 2011 incident was 10 percent

responsible for her need for surgery, and Wilson's underlying cervical disc disease was 60 percent responsible for her need for surgery.

The hearing before the commissioner was held on February 15, 2012. In addition to medical evaluations by Dr. Wilchinsky, Dr. Mintz, and Dr. Strugar,[8] the commissioner heard testimony from Wilson. Wilson testified that the 2006 injury to her neck did not debilitate her in any way. She further testified that the April 4, 2010 injury caused her to miss a few days of work, but that she returned to her position without any restrictions until the March 22, 2011 incident. After the April 4, 2010 incident, Wilson stated that she had had some symptoms in her right arm that became worse after the March 22, 2011 incident. After the March 22, 2011 incident, Wilson testified that her new symptoms included constant numbness in her right arm and cramping of her hand. Additionally, Wilson stated that she was given light duty work restrictions after the March 22, 2011 incident, and that she had had no work restrictions prior to the March 22, 2011 incident.

The commissioner issued her findings and award on August 7, 2012. In addition to making the factual findings as previously discussed, the commissioner stated that she found Wilson to be "credible and persuasive." The commissioner further found: (1) Wilson's work related injuries sustained in the April 4, 2010 and March 22, 2011 incidents were responsible for her need for cervical surgery; (2) the surgery proposed by Dr. Mintz was reasonable and necessary; (3) Wilson had "additional findings" in August, 2011, that were not noted to have existed in 2010; (4) the March 22, 2011 incident probably aggravated Wilson's preexisting condition; (5) the March 22, 2011 incident "was an identifiable second injury that worsened [Wilson's] condition and adversely affected her ability to work"; (6) "despite the fact that [Wilson] may have been a surgical candidate prior to the March 22, 2011 incident, the totality of the circumstances indicate that that incident caused [Wilson's] condition to worsen in a material and substantial way"; and (7) "Gallagher Bassett is responsible for [Wilson's] injuries after March 22, 2011." The commissioner ordered Gallagher Bassett "to accept liability for [Wilson's] injury of March 22, 2011 and . . . to authorize surgery and pay [Wilson] temporary partial disability benefits commencing June 27, 2011, and continuing pursuant to job searches."

Gallagher Bassett filed a motion to correct the commissioner's findings, which was denied on August 30, 2012. Gallagher Bassett then filed a petition for review with the board. A hearing was held on January 18, 2013. The gravamen of its claim was that the March 22, 2011 incident was not a substantial contributing factor with respect to Wilson's need for surgery. Counsel for Gallagher Bassett argued that all three physicians testified

that the March 22, 2011 incident was less than a substantial contributing factor, and that, therefore, the commissioner could not find contrary to their expert opinions. The board's chairman inquired whether the substantial factor standard was a medical or a legal determination, and counsel for Gallagher Bassett responded that it was both.

The board issued its decision on August 8, 2013, in which it concluded: "The precedent in *Hatt* [v. *Burlington Coat Factory*, 263 Conn. 279, 819 A.2d 260 (2003)] places the burden of the claimant's medical condition on the more recent compensable injury when it renders the claimant's disability materially and substantially greater than prior to the injury. We believe a reasonable fact finder could reach this conclusion from the evidence on the record. As an appellate panel, we cannot revisit this decision." Accordingly, the board affirmed the commissioner's decision. This appeal followed.

The principles that govern our standard of review in workers' compensation appeals are well established. "The commissioner is the sole trier of fact and [t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not retry the facts. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's findings and award. . . . Our scope of review of [the] actions of the [board] is [similarly] . . . limited. . . . [However] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed." (Internal quotation marks omitted.) *Sierra* v. *C & S Wholesale Grocers, Inc.*, 128 Conn. App. 78, 81–82, 16 A.3d 1240, cert. denied, 301 Conn. 924, 22 A.3d 1279 (2011).

As correctly determined by the board in this case, the responsibility for the payment of Wilson's surgical expenses and disability benefits is controlled by the language of General Statutes § 31-349, as construed by our Supreme Court in *Hatt* v. *Burlington Coat Factory*, supra, 263 Conn. 279. Section 31-349 (a) provides in relevant part: "The fact that an employee has suffered a previous disability, shall not preclude him from compensation for a second injury . . . . If an employee having a previous disability incurs a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second

injury alone, he shall receive compensation for (1) the entire amount of disability, including total disability, less any compensation payable or paid with respect to the previous disability, and (2) necessary medical care . . . notwithstanding the fact that part of the disability was due to a previous disability . . . ." Section 31-349 (d) provides: "Notwithstanding the provisions of this section, no injury which occurs on or after July 1, 1995, shall serve as a basis for transfer of a claim to the Second Injury Fund under this section. All such claims shall remain the responsibility of the employer or its insurer under the provisions of this section."

In *Hatt*, our Supreme Court was asked to determine whether § 31-349 abrogated common-law apportionment in cases involving a separate and distinct second injury and whether the insurer at the time of the second injury retained sole liability for the second injury claim. *Hatt* v. *Burlington Coat Factory*, supra, 263 Conn. 289. The facts in *Hatt* are similar to the facts in the present case. The claimant in *Hatt* had suffered two distinct injuries to her left foot while working for the same employer. Id., 284–85. The employer, however, had changed workers' compensation insurance carriers during the time between the first and second injuries, and the question arose as to whether there could be apportionment between the two insurers whose coverage did not overlap. Id., 285–86. The court held that apportionment was not appropriate when there was a second distinct injury and that the second insurer retained sole liability for the second injury. Id., 312.

Gallagher Bassett argues that the commissioner and the board erroneously applied the holding in *Hatt* to the facts in the present case because Wilson's current condition (1) was not caused by both the April 4, 2010 and March 22, 2011 injuries, and (2) was not "materially and substantially greater than the disability that would have resulted" from the March 22, 2011 injury alone. Because Dr. Wilchinsky, Dr. Mintz, and Dr. Strugar all agreed that Wilson was a surgical candidate prior to the March 22, 2011 incident, Gallagher Bassett claims that the March 22, 2011 injury could not have been a substantial factor in her need for cervical disc surgery. To conclude otherwise, it claims, goes against the evidence presented and is contrary to expert opinion. Moreover, Gallagher Bassett argues that "all three physicians in this case *testified* that the [March 22] 2011 injury was not a substantial factor in bringing about the need for surgery." (Emphasis added.) We are not persuaded.

As a threshold matter, we note that the determination of whether the substantial factor test has been satisfied is a question of fact. "[T]raditional concepts of proximate cause furnish the appropriate analysis for determining causation in workers' compensation cases. . . . [T]he test for determining whether particular con-

duct is the proximate cause of an injury [is] whether it was a substantial factor in producing the result." (Internal quotation marks omitted.) *Marandino* v. *Prometheus Pharmacy*, 105 Conn. App. 669, 678, 939 A.2d 591 (2008), rev'd in part on other grounds, 294 Conn. 564, 986 A.2d 1023 (2010). "[C]onsidering that what constitutes a substantial factor will . . . vary with the circumstances of each case, an attempt to articulate a more precise standard may, in practice, be unnecessarily restrictive, and may inadvertently foreclose a claimant's right to compensation. . . . The criticism . . . usually leveled at the [substantial factor] test . . . is that . . . it is too general. . . . The answer is that the formula cannot be reduced to any lower terms. . . . It presents a question of fact. . . . The answer to any such [question] when proposed to [the commissioner] must be found by the [commissioner] after a consideration of all the facts that bear upon it. . . . If reasonable minds can disagree as to whether the [claimant] has satisfied her burden of establishing proximate cause . . . we will not disturb the commissioner's finding even if we might reach a different conclusion." (Citations omitted; internal quotation marks omitted.) *Sapko* v. *State*, 305 Conn. 360, 392, 44 A.3d 827 (2012).

In the present case, tracking the express language of § 31-349 (a), the commissioner concluded that the March 22, 2011 incident "caused [Wilson's] condition to worsen in a *material* and *substantial* way." (Emphasis added.) The evidence in the record supports the commissioner's determination: (1) Wilson received no medical treatment for her neck from August, 2010, until the March 22, 2011 incident; (2) after the April 4, 2010 incident, Wilson returned to work without restrictions; (3) after the March 22, 2011 incident, Wilson was given light duty restrictions; (4) Dr. Wilchinsky testified that the March 22, 2011 injury aggravated her preexisting condition and "made it worse"; (5) Dr. Wilchinsky opined that the March 22, 2011 injury probably was 10 percent responsible for Wilson's current condition; (6) Dr. Mintz noted that Wilson had additional symptoms in August, 2011, that had not been observed in 2010, including hyperreflexia and Hoffman signs; (7) Dr. Strugar testified that the April 4, 2010 and March 22, 2011 injuries both were substantial factors in the treatment required for her current condition; (8) Dr. Strugar testified that Wilson exhibited symptoms of hyperreflexia, clonus, and Hoffman signs after March 22, 2011; (9) Dr. Strugar opined that the March 22, 2011 incident was 10 percent responsible for Wilson's need for surgery;[9] (10) Wilson testified that she had had some symptoms in her right arm prior to the March 22, 2011 incident, but that those symptoms became worse after that incident; (11) Wilson testified that she was constantly experiencing numbness down her arm and cramping in her hand after the March 22, 2011 incident, which she had not experienced prior to that incident; and (12) Wilson

explained that she was limited to five pounds of lifting after the March 22, 2011 incident, which precluded her from lifting, pulling, or pushing patients.

The evidence presented was sufficient for the commissioner to conclude that the March 22, 2011 incident caused Wilson's condition to worsen in a material and substantial way. As correctly summarized by the board, "[t]he evidence herein is that [Wilson] had a work capacity prior to the 2011 injury and subsequent to that injury, was unable to continue to perform the job that she had been performing after her 2010 injury." Although Gallagher Bassett argues that the March 22, 2011 injury was not as serious or severe as the April 4, 2010 injury, thereby precluding the finding that it was a substantial factor in her need for surgery, we agree with the board that "[n]either § 31-349 nor the language of the *Hatt* decision makes an exception for cases in which the first injury is much more serious than the second injury." *Kelly* v. *Dunkin Donuts*, No. 4621, CRB 4-03-2 (April 5, 2004).

Gallagher Bassett also argues that the commissioner substituted her own opinion for the opinions of the medical experts because "all three physicians in this case testified that the [March 22] 2011 injury was not a substantial factor in bringing about the need for surgery." This argument fails. At the outset, we do not find that this assertion is totally accurate when the testimony of Dr. Wilchinsky, Dr. Mintz, and Dr. Strugar is read as a whole.[10]

During Dr. Wilchinsky's deposition, he was asked by counsel for Gallagher Bassett whether it was fair to describe the March 22, 2011 incident "as a factor, but not a substantial contributing factor, to the necessity of surgery in this case, given that [Wilson] was already a surgical candidate?" Dr. Wilchinsky responded that he did not "know how to quantify that," although he did acknowledge that he would have recommended surgery prior to the March 22, 2011 incident. After several more questions, Dr. Wilchinsky agreed with counsel's statement that the March 22, 2011 injury was a factor, but not a substantial contributing factor given the fact that she already was a surgical candidate.

During the deposition of Dr. Mintz, counsel for Gallagher Bassett asked: "[Y]our initial opinion was that the March 22, 2011 incident was not a substantial factor in bringing about the need for surgery?" Dr. Mintz responded: "I did not say that." After several additional attempts to have Dr. Mintz characterize the March 22, 2011 injury as a factor but not a substantial factor in bringing about the need for surgery, Dr. Mintz said: "Look, you're playing with words." Eventually, he responded "correct" to counsel's characterization of the March 22, 2011 incident as being "somewhere between a factor and a substantial factor." When further pressed as to whether the March 22, 2011 incident could be

deemed a "substantial factor," Dr. Mintz responded: "So again, I feel somewhat uncomfortable because I am being caught in a war of words."

When Dr. Strugar was asked during his deposition whether the April 4, 2010 and March 22, 2011 injuries aggravated Wilson's preexisting condition, he testified that "[b]oth injuries are substantial factors in her requiring treatment of her current condition . . . ." When counsel for Gallagher Bassett questioned whether the latter injury could be placed somewhere between a factor and a substantial factor, Dr. Strugar acquiesced in counsel's characterization. Later, however, he opined that the April 4, 2010 and the March 22, 2011 incidents were 40 percent responsible for Wilson's need for surgery, and that the March 22, 2011 incident alone was 10 percent responsible for her need for surgery. Dr. Strugar finally questioned counsel: "Is that substantial enough? Is 40 percent substantial?"

A review of the depositions in their entirety reveals that the physicians were uncomfortable in being forced to characterize the March 22, 2011 injury as *either* a factor *or* a substantial factor in Wilson's need for surgery. Moreover, counsel for Gallagher Bassett did not offer a definition of "substantial factor" for the physicians to use in proffering their opinions. All three physicians clearly opined that the March 22, 2011 incident played a part in Wilson's current condition, worsening the symptoms that she had suffered prior to the latter incident. As to whether it was a "substantial factor," that determination properly was left to the commissioner to make after hearing and weighing all of the evidence presented.[11]

Accordingly, for all of the foregoing reasons, we conclude that the commissioner's determination finds support in the record, and, therefore, the board did not err in affirming the commissioner's findings and award.

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] Wilson, did not file a brief in this appeal, which centers on the dispute between Liberty Mutual and Gallagher Bassett, the workers' compensation insurance carriers for Maefair at the time of Wilson's various injuries.

[2] Because these three claims are interrelated, we address them together.

[3] John G. Strugar, a board certified neurosurgeon who testified in this case, defined hyperflexia, also referred to as hyperreflexia, as unusual reflexes that are indicative of spinal cord compression in some patients.

[4] Dr. Strugar; see footnote 3 of this opinion; defined clonus as an abnormal finding that is indicative of spinal cord compression.

[5] As part of the commissioner's decision, she made the following order: "Further hearings will be held regarding the appropriate sanctions for . . . Liberty Mutual's undue and unreasonable delay in failing to authorize the recommended evaluation with Dr. Mintz."

[6] Although Dr. Wilchinsky maintained that it was difficult to quantify, he indicated that he would probably attribute 10 percent of her condition at that time to the March 22, 2011 incident.

[7] Dr. Strugar; see footnote 3 of this opinion; defined a Hoffman sign as an abnormal reflex in the upper extremities, which is indicative of spinal cord compression above the level of the fifth cervical vertebrae.

[8] Prior to the issuance of the commissioner's findings and award on August 7, 2012, the commissioner received Wilson's medical records, information relative to Wilson's search for employment opportunities, the deposition transcript of Dr. Wilchinsky, the deposition transcript of Dr. Mintz, and the deposition transcript of Dr. Strugar as exhibits.

[9] As previously noted, Dr. Strugar opined that Wilson's underlying cervical disc disease was 60 percent responsible for her need for surgery. The commissioner credited his testimony. Her preexisting condition, however, does not negate the finding that her March 22, 2011 injury was a substantial factor in her need for surgery. It is well established that "an employer takes the employee in the state of health in which it finds the employee. . . . [A]n injury received in the course of the employment does not cease to be one arising out of the employment merely because some infirmity due to disease has originally set in action the final and proximate cause of the injury." (Citation omitted; internal quotation marks omitted.) *Blakeslee* v. *Platt Bros. & Co.*, 279 Conn. 239, 245–46, 902 A.2d 620 (2006). "If the injury is the cause of the disability, it is compensable even though such an injury might not have caused the disability if occurring to a healthy employee or even an average employee." *Mages* v. *Alfred Brown, Inc.*, 123 Conn. 188, 192, 193 A. 780 (1937).

[10] "Whether an expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend [on] the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony." (Internal quotation marks omitted.) *Marroquin* v. *F. Monarca Masonry*, 121 Conn. App. 400, 419, 994 A.2d 727 (2010).

[11] We agree with the board's position that it was the responsibility of the commissioner to make the determination whether the substantial factor test had been satisfied. The commissioner, after reviewing the expert testimony and all of the other evidence presented in this matter, concluded that the March 22, 2011 incident had caused Wilson's condition to "worsen in a material and substantial way." The commissioner's determination was a legal determination based upon the medical evidence that she credited.

It is also important to note that "[i]t [is] within the commissioner's discretion to credit all, part or none of the expert testimony presented at the hearing." *Dixon* v. *United Illuminating Co.*, 57 Conn. App. 51, 59, 748 A.2d 300, cert. denied, 253 Conn. 908, 753 A.2d 940 (2000).